426 So.2d 1191 (1983)
Mary Therese HOECKER, Appellant/Cross Appellee,
v.
Thomas J. HOECKER, Appellee/Cross Appellant.
No. 81-776.
District Court of Appeal of Florida, Fourth District.
February 9, 1983.
Edna L. Caruso, West Palm Beach, and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellant/cross appellee.
Evan I. Fetterman of Law Offices of Evan I. Fetterman & Associates, North Palm Beach, for appellee/cross appellant.
DELL, Judge.
The wife appeals from a final judgment of dissolution of marriage which awarded substantially all the parties' assets to the husband.
Shortly after their marriage, the parties moved to Florida and opened Some Place for Beef and Seafood Restaurant. The restaurant business consists of two properties: the stock of T.J. Hoecker Enterprises, Inc. d/b/a Some Place for Beef and Seafood Restaurant, wholly owned by appellee; and the real estate which houses the restaurant. The corporation does not hold title to the real estate. Instead, the parties bought the real estate jointly at a price of $180,000. However, mortgages securing notes in the amount of $312,000 now encumber the real estate. The corporation is the maker of these notes, and received that portion of the loan proceeds which exceeds the purchase price of the real estate. It used these funds to establish and operate the restaurant business.
In her petition, appellant joined the corporation as a party respondent. In essence, she prayed for a fifty percent special equity in the corporation. In his counter-petition, appellee denied appellant's claim for special *1192 equity and in turn alleged that he had provided all consideration for the purchase of the real estate. He sought a special equity to the entire extent of what he calls appellant's "titular" ownership of the real estate.
The court dismissed the corporation as a party. In its final judgment, the court awarded appellant $1,300 per month for twenty-four months as rehabilitative alimony, found that appellee owns the corporation and all assets of the restaurant, and granted appellee a special equity of $150,000 in the real estate. By motion for rehearing, appellant reminded the court that it had failed to apportion the parties' respective liability on notes and mortgages and prayed for relief from liability in excess of her ownership interest. The court denied rehearing. By this final judgment, appellant retains a $15,000 interest in real estate encumbered by $297,000 of debt attributable to appellee and his corporation.
The primary issue on appeal is whether the trial court erred in the distribution of property. Additionally, appellant challenges the dismissal of the corporation and the court's failure to adjust the parties' respective liabilities.
A trial judge abuses his broad discretion when no reasonable man would take the view he has adopted. If reasonable men could differ as to the propriety of his action, this court cannot say that the trial judge abused his discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). However, the Supreme Court also announced a mandatory minimum standard of reasonableness:
[A] trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and in viewing the totality of the circumstances, one spouse should not be "shortchanged." [citation omitted, emphasis added].
Id. at 1204.
The final judgment holds appellant responsible for debts attributable to property awarded to appellee, in an amount almost 20 times as large as her retained ownership interest. Appellant has indeed passed from prosperity to misfortune.
Of the specific points raised by appellant, we first consider dismissal of the corporation. Although a court may order a husband to transfer stock to his wife without joinder of the corporation as a party, Feldman v. Feldman, 390 So.2d 1231 (Fla. 3d DCA 1980), where the husband's intimacy with the corporation makes the wife's actions against them inextricably intertwined, the court should not dismiss the corporation. Rosenberg v. North American Biologicals, Inc., 413 So.2d 435 (Fla. 3d DCA 1981). The parties' course of conduct demonstrates a blending of marital and business partnerships. Both parties had access to the corporate checkbook and apparently paid corporate bills, mortgage installments, and personal expenses therefrom. Further, each party obtained certain perquisites from the business. For example, appellee paid for his trips to Nassau and Las Vegas from restaurant funds. The restaurant bought and maintained appellant's car. Finally, appellee's testimony demonstrates the identity of interest existing between him and the corporation. During cross examination, appellant's counsel attempted to learn the source of funds expended to install sewerage facilities at the restaurant. Appellee denied that the money came from his and appellant's joint checking account. The following colloquy occurred:
Q. Where did it come from?
A. It came from the company account.
Q. Well, the company didn't have the money at that time?
A. Well, then, my personal account. I'm the company, so whether the  whether Some Place's name was on the check or my name on the check I was the company. It came from the company account.
(emphasis added). This evidence demonstrates the intertwining nature of appellant's claims against appellee and the corporation. The trial judge erred by dismissing the corporation.
*1193 We also find error in the property awards. Ball v. Ball, 335 So.2d 5 (Fla. 1976) defined a three step analysis to determine distribution of assets on dissolution. First, record title demonstrates presumptive ownership. Second, either party may attempt to prove special equity by reason of extraordinary contribution to the acquisition of the property. One may contribute either financially or by personal industry and service, Ball, supra; Tanner v. Tanner, 194 So.2d 702 (Fla. 2d DCA 1967). A spouse may seek a special equity in the other's solely owned property, Green v. Green, 228 So.2d 112 (Fla. 3d DCA 1969) or seek 100 percent ownership of jointly held property, Malkemes v. Malkemes, 357 So.2d 223 (Fla. 2d DCA 1978). A spouse may establish special equity in real estate, Razzano v. Razzano, 307 So.2d 894 (Fla. 1st DCA 1975) or in personal property, including corporate stock, Wollman v. Wollman, 235 So.2d 315 (Fla. 3d DCA 1970). Once the claiming spouse has demonstrated evidence of special equity, then, in the third step of the Ball analysis, the other may attempt to show that the claiming spouse intended this contribution to be a gift. Marsh v. Marsh, 419 So.2d 629 (Fla. 1982).
We shall first consider the real property. The parties purchased this real estate from strangers during coverture. The deed names "Thomas J. Hoecker and Mary Therese Hoecker, his wife" as grantees.
Although the trial court awarded appellee a $150,000 special equity in the real estate, no evidence of a $150,000 contribution by him appears of record. Appellee claims he paid $100,000 toward the purchase of the real property. However, his own exhibits and testimony affirmatively demonstrate that not less than $80,000 of this sum represented a loan by him to the corporation. The trial court erred in relying on this loan to the corporation to award appellee any special equity in the real estate, much less a special equity more than half again as large as the amount of the loan.
Aside from his cash contributions, appellee contends his individual liability establishes his special equity. We find no record support for this statement. The closing statement shows a cash down payment of $4,000 from an unspecified source. The balance of the purchase price came from two notes. The first note evidences a bank loan to the corporation rather than to the parties. A first mortgage on the real estate, executed by the parties individually, secures this note. The second source of funds is a note executed by appellant and appellee in their individual capacities which obligates them to pay the sum of $35,000 to the sellers of the real property. A second purchase money mortgage secures this note. We fail to find any item of documentary evidence which demonstrates that appellee, individually and not as president of T.J. Hoecker Enterprises, undertook any obligation without the joinder of appellant.[1]
Appellee failed to establish an extraordinary contribution to the acquisition of the real estate. His claimed special equity must fail.
Next, we consider the court's denial of appellant's claimed special equity in the corporate stock. Appellee holds 100 percent of this stock. Appellant presented evidence that she contributed $8,000 cash, her separate property. She gave this money to appellee, with the belief and intention that he would use it to renovate the restaurant. However, with the exception of one item of equipment, appellant could not state exactly how appellee spent her separate funds. Appellee claims that appellant never gave him this money, but that she used it for living expenses. Appellee asserted that he contributed $100,000 to the establishment of the business, of which at least $80,000 represented a loan to the corporation.
Additionally, appellant testified to her substantial labors in the restaurant. In August, *1194 1979, she quit her job with an insurance company to devote herself to the restaurant full time. She remodelled the interior of the building; hired, fired and supervised employees; managed restaurant finances, including payment of expenses from the corporation checking account; and exercised authority co-extensive with that exercised by appellee. She worked double shifts  fifteen hours a day  every day of the week. Testimony of restaurant employees corroborated that of appellant. Appellant also performed traditional household duties. We have found no evidence which tends to disprove evidence of appellant's labors. At least with respect to her work and labor, appellant has satisfied the second prong of the Ball test: an unrebutted showing of an extraordinary contribution to the acquisition of the property.
Appellant asks this court to remand with directions to transfer fifty percent of the stock to her. We decline to do so. Appellee also performed substantial labor in building the restaurant business, and made a significant cash contribution to the corporation. He has extensive restaurant experience, while the establishment of Some Place has been appellant's first venture into the restaurant business. In light of appellee's contributions, appellant's interest in the corporation may or may not amount to fifty percent. Further, to establish a special equity does not compel the trial judge to deliver possession of the property in question. The court may make a cash award equivalent to the value of the special equity, see, e.g. Heath v. Heath, 103 Fla. 1071, 138 So. 796 (1932) or fashion some other equitable distribution, Tronconi v. Tronconi, 7 F.L.W. 2510, 425 So.2d 547 (Fla. 4th DCA 1982); Canakaris, supra, in the exercise of his broad discretion.
We have two directions. First, the court must not make a mere token award. Appellant's labors were substantial and continuing, and for the most part, uncompensated.[2] Second, the court shall not consider the $80,000 which appellee loaned to the corporation to establish a special equity in the real property in favor of the appellee.
Finally, the respective liabilities of the parties must conform to their ownership interests. If the court finds that appellant should have a fifty percent special equity in the corporation then it need not make any adjustment of the obligations on notes and mortgages. However, if the trial court adjudges something less than fifty percent special equity in favor of appellant, the court must also fashion an adjustment of that portion of the liabilities which represents debt attributable to property awarded appellee. See Farrington v. Farrington, 390 So.2d 461 (Fla. 3d DCA 1980), petition for review dismissed, 399 So.2d 1142 (Fla. 1981).
We also reverse the award of rehabilitative alimony and remand for reconsideration in light of the property distribution to be made. Eagan v. Eagan, 392 So.2d 988 (Fla. 5th DCA 1981).
HURLEY, J., and GEIGER, DWIGHT L., Associate Judge, concur.
NOTES
[1] One of appellee's exhibits, a Small Business Administration guarantee form, does contain appellee's individual signature. However, a handwritten note appears at the top of this document: "To be signed by wife." This same form, bearing a later date and amended to reflect a subsequent increase in the principal amount of the loan, bears the signatures of both appellant and appellee.
[2] Apparently, neither party received salary from August, 1979, until January, 1980. They took $150 per week through February, and $300 per week thereafter.