763 So.2d 461 (2000)
Craig WERTKIN, Appellant,
v.
Barbara WERTKIN, Appellee.
Nos. 4D98-2609, 4D99-1237.
District Court of Appeal of Florida, Fourth District.
June 14, 2000.
Rehearing Denied August 2, 2000.
*462 Martin H. Colin of Law Offices of Martin H. Colin, Lake Worth, for appellant.
Barbara J. Compiani of Caruso, Burlington, Bohn & Compiani, P.A., and Joel M. Weissman, P.A., and Doreen M. Yaffa, P.A., West Palm Beach, for appellee.
SCOLA, ROBERT N., Jr., Associate Judge.
Appellant, Craig Wertkin ("Husband"), appeals from a final judgment of dissolution of marriage and a final judgment awarding appellee, Barbara Wertkin ("Wife"), attorney's fees and costs. Because the trial court failed to make specific findings of fact relating to the value of the marital home or determine any special equity that the husband and/or wife may have had in the home, we reverse and remand for the court to make those findings. We affirm the orders in all other respects.

I.
The parties were married in December 1993, and a petition for dissolution of marriage was filed in February 1996. This was the second marriage for each and no minor children were born of the union. Prior to the marriage, the husband owned a home at 17240 Northway Circle in St. Andrews Country Club. He had also purchased a golf equity membership with that home for $35,000.00. The parties lived in *463 the Northway Circle home for more than one year prior to their marriage, but there is no claim by the wife to that property.
In the summer of 1993, the husband learned that two other homes in St. Andrews County Club were in default. The properties were located at 17333 and 17346 St. James Court. The Resolution Trust Corporation ("RTC") held promissory notes and mortgages for the homes and was looking to transfer them for value. The husband decided to acquire both properties. First, he paid each owner $30,000.00 for the right to possess the homes so that he could make repairs while awaiting formal acquisition at the time of the foreclosure sale. Next, in September 1993, he paid $951,000.00 to RTC to purchase the two notes and mortgages. In order to do so, the husband borrowed money from his former father-in-law, his father and wife, who was then his fiancee. A promissory note for the loan from the wife in the amount of $375,000.00 was executed and carried an interest rate of 6.5%. The balance of the money for the purchase came from the husband's non-marital assets.
The parties moved into the home on 17333 St. James Court two days before their marriage and lived there until separating. Eleven months after the marriage, the husband completed the foreclosure process and obtained certificates of title in his own name to the two homes on St. James Court. He also transferred the golf equity membership from his non-marital home at Northway Circle to 17333 St. James Court. Shortly after acquiring the titles, he sold the home at 17346 St. James Court and used the proceeds of the sale to repay the wife in full for the $375,000.00 loan, plus interest. There is no claim by the wife to any other proceeds from that sale.
The evidence during the trial established that the husband and wife each expended a considerable amount of time, effort and money to acquire and repair the home both prior to and after the marriage. Specifically, the wife spent monies for repairs and renovations, the husband made the down payment on the home and paid a right of possession fee, tax arrearage, repairs and renovations, legal fees, interest on loans and the golf equity. Unfortunately, the final judgment made no findings relating to any special equity that the husband and/or wife may have had.
Several experts testified as to the value of the home at 17333 St. James Court at the time of dissolution. Their opinions varied greatly, with the lowest value estimated at $650,000.00 and the highest at $1,091,653. In its final judgment, however, the court did not make any finding as to the value of the property.

II.
The husband's first claim is that the court abused its discretion in determining that the home at 17333 St. James Court was a marital asset subject to equitable distribution. Section 61.075(5), Florida Statutes (1997), defines a marital asset as those "[a]ssets acquired ... during the marriage, individually by either spouse or jointly by them." The husband argues that because he purchased the notes and mortgages before the marriage, the home is a non-marital asset. This assertion is incorrect. In Martyn v. First Federal Savings and Loan Ass'n of West Palm Beach, 257 So.2d 576, 577 (Fla. 4th DCA 1972), this court held:
[t]here are two theories concerning mortgages, the title and lien theories. Under the title theory the mortgagee has title at law, a fee simple conditional. In other words, the holder of the mortgage, while not in possession, is actually the owner. He loses his ownership when the mortgage is paid.
On the other hand, under the lien theory, the mortgagee has neither title nor the right of possession.

Florida is a lien theory jurisdiction....
(Emphasis added)(footnote omitted).
Section 697.02, Florida Statutes (1997), provides, "[a] mortgage shall be *464 held to be a specific lien ... and not a conveyance of the legal title or of the right of possession." (Emphasis added). Hence, "a mortgage in Florida does not transfer title, possession, or any other interest other than a naked lien...." Martyn, 257 So.2d at 579. The husband's pre-marriage purchase of the note and mortgage, therefore, did not give him title to the home. Since title was acquired during the marriage, it is marital property. See Holmes v. Holmes, 613 So.2d 511, 513 (Fla. 3d DCA 1993)(where wife entered into a contract to purchase home six months before marriage but did not close until a few days after the marriage, home was a marital asset, but wife was entitled to special equity for down payment); Cummings v. Cummings, 719 So.2d 948, 950 (Fla. 4th DCA 1998)(husband's contract to purchase a company signed during the marriage deemed a marital asseteven though closing of transaction took place eleven days after dissolution filedsince contract was enforceable and had value at time of signing); Cornette v. Cornette, 704 So.2d 667, 668 (Fla. 2d DCA 1997)(title to real property acquired by party prior to marriage is a nonmarital asset).

III.
Next, the husband asserts that even if the home was properly found to be marital property, the order must be reversed because it failed to set forth specific findings as to the value of the home and any special equity that the husband and/or wife may have had in it. Indeed, the order merely states that the home shall be sold and the "net profits" distributed equally, but gives no guidance as to how the "net profits" are to be determined. Before a court makes a distribution of marital assets, it must make specific findings as to their value because "[w]ithout specific findings as to the value of marital assets, meaningful appellate review of an equitable distribution of property is impossible." Singleton v. Singleton, 696 So.2d 1338, 1338-39 (Fla. 4th DCA 1997)(citing Keaton v. Keaton, 634 So.2d 798 (Fla. 4th DCA 1994)); see also Reich v. Reich, 652 So.2d 1200, 1202 (Fla. 4th DCA 1995); Armstrong v. Armstrong, 623 So.2d 1216, 1219 (Fla. 4th DCA 1993); § 61.075(3), Fla. Stat. (1997). In this case, the trial court erred by failing to place a value on the home, especially since the experts' opinions on its value varied greatly. See Singleton, 696 So.2d at 1339.
The court also erred by failing to make findings of special equity that either the husband and/or the wife may have had in the home. A "special equity" is defined as a vested interest that a spouse acquires in property held by the parties during the marriage due to contribution of funds, property or services made over and above the performance of normal marital duties. See Duncan v. Duncan, 379 So.2d 949, 952 (Fla.1980); see also Dyson v. Dyson, 597 So.2d 320, 324 (Fla. 1st DCA 1992); Hoecker v. Hoecker, 426 So.2d 1191, 1193 (Fla. 4th DCA 1983).
Since the undisputed evidence established that both the husband and wife expended nonmarital funds to obtain and repair the home before the marriage, each is entitled to a special equity for the value of those contributions. See Landay v. Landay, 400 So.2d 43, 45 (Fla. 2d DCA 1981), opinion modified on other grounds, 429 So.2d 1197 (Fla.1983)(spouse who contributes a down payment on the marital home with non-marital funds is entitled to a special equity); Gliozzo v. Gliozzo, 503 So.2d 967, 967 (Fla. 3d DCA 1987)(same). The failure of the court to make specific findings as to each party's special equity is reversible error. See Scott v. Scott, 643 So.2d 1124, 1126 (Fla. 4th DCA 1994); Nash v. Nash, 624 So.2d 370, 371 (Fla. 3d DCA 1993).
We therefore reverse and remand for the trial court to make specific findings as to the value of the marital home and each party's special equity in the home. If either party's share of equitably-distributed property is affected as a result of these calculations, the court may amend the distribution *465 of other marital property so that the total distribution of property remains equitable.
KLEIN and TAYLOR, JJ., concur.