Fred D. Harris and Margaret Harris, his wife, *Appellants*, vs. Sarah B. Requa, as sole beneficiary, William MacFarlane and Julius Bachman, as Executors of the Last Will and Testament of William A. Requa, deceased; Elwin S. Piper and Lillian R. Piper, his wife; Anna M. Piper and E. Leroy Piper, her husband; and Arthur W. Emmons and Helen Maude Emmons, his wife, *Appellees*.

140 So. 911.

En Banc.

Opinion filed April 21, 1932.

Petition for rehearing denied May 31, 1932.

*Wilder & Jacobsen*, Solicitors for Appellants;

*Stapp, Gourley, Vining & Ward*, Solicitors for Appellees.

Andrews, Commissioner.—This cause is here upon appeal from a final decree of the Circuit Court of Dade County, rendered in favor of Sarah B. Requa, et al., and against Fred D. Harris, et al.

The main question presented for review revolves around various and sundry sales contracts, trust agreements, complicated transfers, and assignments of interest in Lot 22, Block 14, Section B, of Coral Gables, Dade

County, Florida. This case may be considered as typical of a great number of like cases coming from localities where complicated real estate dealings were carried on during and subsequent to the boom period in Florida, and in a measure likewise demonstrates the gigantic task placed upon the trial and appellate courts to untangle and if possible finally adjudicate the status of those persons who still have rights in such property.

The main facts arising from the various transfers and agreements culminating in this suit may be briefly stated as follows:

(1) George E. Merrick, being the owner of Lot 22, Block 14, Section B, Coral Gables, Dade County, Florida, on which there was a residence and garage, on April 20, 1923, joined by his wife, made and executed a mortgage on the above premises in favor of the Calvert Mortgage Company of Maryland, to secure the sum of $3750.00, which mortgage was recorded May 18, 1923;

(2) On October 1, 1923, Merrick joined by his wife, made and executed a contract for deed to convey the said premises to Elwin S. Piper and wife for $10,500.00, payable $5500.00 cash, and $5000.00 in 24 quarterly payments, the said agreement making no specific mention of the above Calvert mortgage, but it covenants to convey the premises to the Pipers by good and sufficient warranty deed "free of all encumbrances," the said agreement being recorded December 12, 1924;

(3) On November 13, 1924, the Pipers executed and delivered a sales contract covering said premises to Arthur W. Emmons for $12,750.00, with $3,722.07 payable in cash on February 1, 1925, $5000.00 by promissory note payable in 20 equal quarterly installments and the assumption of $4,027.93 balance due from the Pipers to the Merricks on the Merrick-Piper contract, the said contract being recorded December 9, 1924;

(4) On December 12, 1924, the Pipers assigned their interest in the contract with the Merricks to the Miami Bank and Trust Company as Trustees, by dual instruments executed simultaneously,—one a simple assignment to which was attached the Merrick contract and the other a trust agreement, to whom Emmons agreed to make payments on the $4027.93 still due Merricks.

(5) On April 30, 1925, the Merricks still being owners of the title to said property, conveyed the same to the Coral Gables corporation "subject, nevertheless, to all encumbrances of record * * * to be assumed and paid by the said grantee (Coral Gables Corp.) when legally due and payable," which would include the Calvert mortgage.

(6) Upon Emmons completing the payments of $4,027.93 to the Coral Gables Corporation, due the Merricks as part of the purchase price in the contract from Pipers, the Miami Bank & Trust Company as trustee required the Coral Gables Corporation to execute to it a warranty deed to the premises, on February 24, 1927; thus the title to the premises and the Pipers' agreement to convey to Emmons, merged in said trust company.

(7) On July 15, 1927, there still being due $3875.00 on the $5000.00 note *from Emmons* to the Pipers under the Piper-Emmons contract of sale, the Pipers assigned their interest in said contract and note to Fred D. Harris;

(8) On March 15, 1928, Arthur W. Emmons as vendee in the Piper to Emmons contract, assigned his interest in the property to William A. Requa who brought suit for the specific performance of the Piper-Emmons contract, but died subsequent to the institution of this suit, leaving his wife sole beneficiary of his estate, and who became complainant below and the principal appellee here;

(9) On September 4, 1929, the Miami Bank & Trust

Company as Trustee, executed and delivered a deed to the premises to said Fred D. Harris, who was at the time the assignee of the Pipers' interest in the Piper-Emmons contract on which Harris had received $900.00 from Emmons and Requa in payments as such assignee, leaving about $3000.00 plus interest still due him on the said note made to the Pipers.

(10) Simultaneously with the acquisition by Fred D. Harris of the Pipers' interest in the Piper-Emmons contract, there was conveyed by the Coral Gables Corporation to the South Florida Trust Company as Trustee, legal title to *two other lots* in the Biltmore section of Coral Gables for the purpose of indemnifying the said Pipers or their assigns (Harris) against the payment of the Calvert mortgage, and the indemnifying agreement having later become effective because of a default in payment of interest on the said Calvert mortgage by the Coral Gables Corporation (as provided for in the trust agreement) the Trust Company on February 26, 1929, conveyed the said above two lots to Fred D. Harris, thus Harris became the holder of the title not only in said two lots but also the premises here involved and the Emmons note.

(11) Previous to the above conveyance William Gleichmann, the owner of the Calvert mortgage, on November 22, 1928, instituted suit to foreclose. On the 15th day of February, 1929, there remained still due on the said Piper-Emmons contract and note held by Fred D. Harris, the sum of $3000.00 principal, plus interest; and two months later (on April 15, 1929), Requa, as vendee, under the Emmons contract, having assumed payment of the above note, made a conditional tender to Harris of $3,171.70, if Harris would convey or cause to be conveyed to said Requa the premises free and clear of all encumbrances, and particularly free and clear of the

Calvert mortgage; this Harris failed and refused to do. Subsequently on the 5th day of July, 1929, Requa, to protect his interest, paid the sum of $3875.93 to obtain a satisfaction of the final decree obtained in the foreclosure by Gleichmann of the Calvert mortgage which the Merricks and their successors in the legal title to said lot 22 were bound to convey free and clear of the Calvert mortgage.

This specific performance suit was instituted by Requa in order to compel conveyance by Harris to Requa of the legal title to the said premises according to the terms of the contracts from the Merricks to Pipers and from Pipers to Emmons and from Emmons to Requa; and require him to allow credit or set-off in favor of Requa of the amount paid to satisfy the Calvert mortgage as against the amount due on account of Piper-Emmons contract, and to have personal decree against Harris for any excess paid by Requa to satisfy the mortgage decree over the balance due on the note.

After a final hearing the Chancellor entered a decree finding that the Complainants are entitled to the relief prayed for in their bill of complaint and requiring Fred D. Harris and wife to specifically perform and execute a deed to the said property to Requa as assignee of the agreement (ex. B to bill of complaint) made by the Pipers to Emmons, and in default the decree shall operate as a conveyance of said property from the said Fred D. Harris and wife to Sarah B. Requa as sole beneficiary under the last will and testament of William A. Requa deceased; that the complainant have and recover from defendant Fred D. Harris the sum of $704.23, which is the overpayment and difference in the amount of the mortgage foreclosure decree of $3875.93 which complainant Requa had to pay and satisfy of record and the $3171.70 due by Requa on said $5000.00 note as

obligee under the Piper-Emmons contract; and that the said original promissory note of $5000.00 dated February 1, 1925, signed by Arthur W. Emmons and made in favor of the Pipers be cancelled and annulled, etc.

While the above statements of facts do not include all the transactions involved in this appeal, all nevertheless have been noted and considered, and only those are specifically mentioned as would affect the material issues in the case.

The main question presented by this suit for adjudication is the proper construction to be placed upon the said Piper-Emmons contract (ex. B, Bill of Complaint), which the Court is requested by the said bill of complaint to have specifically performed. This question may be determined not only from the above instrument itself, but by such light as may be shed upon it by the conduct of the various parties with reference to that instrument.

It is first to be observed that the Merricks in the Merrick-Piper contract, agree to convey good title "free and clear of all encumbrances" to the Pipers, and that at this time there was of record the said Calvert mortgage of $3750.00 encumbering the premises, and that the Pipers had notice of such encumbrance, both actual and constructive.

The contract from the Pipers to Emmons (Ex. B) provides (1) that the Pipers "agree to sell and do sell" and that Emmons "agrees to purchase and does purchase" the said Lot 22, Block 14, Section B, Coral Gables; (2) that upon payment by Emmons of $3722.07, and delivery of a note for $5000.00 payable to the Pipers in quarterly installments over a period of five years, that the Pipers shall execute and deliver to Emmons "an assignment of the contract" made from the Merricks to the Pipers; (3) that the rights of the Merricks, under the Merrick-Piper contract "have this day been assigned

to the Miami Bank and Trust Company as Trustee," to whom all payments by Emmons are to be made in carrying out the terms of this agreement, and (4) that the said Piper-Emmons agreement shall be binding upon "the heirs, personal representatives and *assigns*" of the parties thereto.

It is observed that the Pipers, Emmons and Requas each went into possession soon after entering into their contract respectively. It appears to be conceded that the covenant to convey title free and clear of the Calvert mortgage was carried as an obligation not only upon the Merricks, but each successor *in title* from the Merricks to Coral Gables Corporation to Miami Bank & Trust Company, and last to Fred D. Harris, respectively, conditioned only upon the payment of the $5000.00 note executed to the Merricks by the Pipers payable over a period of twenty-four quarterly payments of six years.

It also must be conceded that the above covenant of the Merricks to convey title free and clear to the Pipers would enure to each successive obligee in the respective contracts from the Pipers to Emmons and from Emmons to Requa.

It appears to be contended by the appellants that the Pipers merely agreed to assign to Emmons the Pipers' interest in the said Merrick-Piper contract; while appellees contend that the Piper-Emmons contract is in substance an agreement to convey the premises to Emmons or his assigns with the implied obligation running with said agreement to convey the premises free and clear of the Calvert mortgage, and that the stipulation to assign the Merrick-Piper "contract for deed" in the said contract is merely a method or medium by which Emmons or his assigns could require a conveyance of the title free and clear upon making all payments due

on the $5000.00 note originally made by the Pipers in favor of the Merricks.

There seems to be very little dispute as to the evidence in this case between the parties. The controversy appears to center around the application of a law to such facts as are practically undisputed.

It is our conclusion that any of the successive obligees of the Pipers had the right to demand and require any *holder of the title* (whether Merrick, Coral Gables Corporation, Miami Bank & Trust Company, or Fred D. Harris) to convey the premises free and clear of the Calvert mortgage upon the payment of the balance due on the original $5000.00 Merrick note which was accepted from the Pipers as part payment for the premises. The balance due on this note was actually paid in full by Emmons and thus he or his successor Requa became entitled to a deed from the then holder of such title, free and clear as to the Calvert mortgage. It is also clear that if Requa was compelled to satisfy the judgment obtained pursuant to foreclosure of the Calvert mortgage, that Requa would have the right to set off the amount paid to satisfy said judgment as against the balance due by him on the Emmons note held by defendant Harris, which Requa had agreed to pay—also Requa had the right to a personal decree against Harris for any excess of any amount paid to satisfy the mortgage over the amount still due on the note, which the judgment states is $704.23 and costs of the suit.

The rule is well settled that ''one purchasing property with notice that the grantor had contracted to convey it to another, may be compelled to perform the contract in the same manner and to the same extent as his grantor would have been liable to do had he not transferred the legal title.'' Drake v. Brady, et al., 57 Fla.

393, 48 So. 978.   See also Haman v. Holz, 84 Fla. 1, 92
So. 874; Fisher v. Miller, 92 Fla. 48, 109 So. 257.

In other words, it being shown that Harris had at the
time purchased and held the title to the premises he
would be required to convey the premises to Requa free
and clear of the Calvert mortgage to the same extent as
his predecessor in title.

In the case of Wheeler v. Sullivan, et al., 90 Fla. 711,
106 So. 877, this court repeated what it had theretofore
held, that ''in every valid contract for the sales of land,
whatever may be the language in which it is couched,
there is an implied undertaking to convey a good title,
unless such an obligation is expressly excluded by the
terms of the agreement.''   Holland v. Holmes, 14 Fla.
**390.**

It would seem under the facts in this case that Requa
should also be entitled to credit for the amount paid in
discharge of the Calvert mortgage, even though it ante-
dated the contract for deed, which he holds—that is to
say, the Piper-Emmons-Requa contracts for deeds.   See
Latin-American Bank v. Rogers, 87 Fla. 147, 99 So. 546;
also Peterson v. Howell, et ux., 99 Fla. 179, 126 So. 362;
Hawkins v. Garrison, 97 Fla. 156, 120 So. 309.

While the above two last cases cited are law cases it
will be observed that Commissioner Davis, speaking for
the Court in Peterson v. Howell, states that ''such an
action (for money paid by the plaintiff to the use of the
defendant) is in the nature of an equitable remedy, lib-
eral in form and favored by the Court as a remedy.''
In that case it was also held that ''one who, although not
legally liable for a debt, will suffer a loss of his property
if the debt is not paid, may, on paying the debt, recover
the money so paid from one whose default in paying the
debt placed on him the burden of such payment.''   In
that case it was also held that it was the defendant's

duty to pay the mortgage debt or to see that it was paid, and that it could not be rightfully said that payment of the mortgage debt by plaintiffs was a voluntary payment of the debt of another, but that the plaintiffs made the payment to protect their own interest, and to keep the property from being sold under foreclosure proceedings, and under such circumstances the law implies a request on the part of the defendant to plaintiffs to make such payment. See also Maupin on Marketable Title to Real Estate (Third Edition), p. 552, sec. 203; 49 C. J. 20; 2 Enc. Pl. & Pr. 1012.

It seems that the above last cited decisions of this Court are very persuasive, if not controlling in the present case, in that in neither of those cases did the vendor have the legal title, but only a contract of purchase, and the encumbrances affecting the premises antedated the contract sued upon, which it became necessary for purchaser to pay off and discharge, and this resulted in an overpayment.

Finding no error in the final decree of the trial court the same is hereby affirmed.

Affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the court below be, and the same is hereby affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.

TERRELL, J., not participating.