**SUN OIL COMPANY, Plaintiff-Appellant,**

v.

**BEHRING PROPERTIES, INC., et al., Defendants-Appellees.**

No. 72–2493.

United States Court of Appeals, Fifth Circuit.

April 10, 1973.

Rehearing Denied June 6, 1973.

William A. Meadows, Jr., Eugene C. Heiman, Miami, Fla., for plaintiff-appellant.

Gilbert A. Haddad, Richard M. Gale, Miami, Fla., for defendants-appellees.

Before AINSWORTH, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

This suit arose out of a proposed but abortive sale of Florida real estate to Sun Oil for a filling station site. Behring, the owner, executed and delivered to Sun a proposed agreement of sale on Sun's form, to be sent to Sun's home office for its approval and execution. Before Sun had acted Behring conveyed by warranty deed to Ahrenholz for a lesser consideration than it was to receive from Sun.[1] The deed recited: "The foregoing land is conveyed subject to that certain Agreement of Sale dated the ——— day of ———, 1969 between

the Grantor herein and Sun Oil Company."

Paragraph 9 of the proposed agreement provided:

> 9. SETTLEMENT: Settlement shall be held on or before the 15th day of July A.D. 1969, unless Seller is unable to convey said premises to Buyer in accordance with paragraph 5 hereof or Seller is unable to obtain the permits and licenses provided for in paragraph 8 hereof, in which event or events Buyer shall have the right and privilege, at its option, upon written notice to Seller, to (a) extend the date of settlement for a period of 180 days from the aforesaid date in order to afford an opportunity to clear any defects in the title, in accordance with said paragraph 5 hereof, and/or to permit Buyer to obtain the permits and licenses provided for in paragraph 8 hereof, or (b) cancel this agreement, whereupon all right of the parties shall cease and determine. Buyer may also extend the date of settlement for the above period of time if Buyer is unable to obtain a satisfactory survey of said premises by date of settlement . . .

Sun executed the document on condition that the legal description be corrected, a later closing date be negotiated, and a provision added that a street right of way would be dedicated by Behring and accepted by the county. Sun withheld delivery pending determination of whether these changes were agreed upon. Behring's representative informed Sun of the conveyance to Ahrenholz, and secured Ahrenholz's consent to make changes. The representative corrected the legal description. In paragraph 9 he struck through "15th" and "July" and in lieu thereof inserted "25th" and "Sept." He added a separate clause requiring dedication and acceptance of the right of way. He initialed all the changes. With these changes made, Sun delivered the agreement, and the contract, in its amended form, became effective. Nei-

1. Behring wanted the property off its books before the end of its fiscal year. Ahrenholz wanted a quick profit.

ther then nor later did Ahrenholz execute the Behring-Sun agreement, nor did anyone sign it on his behalf. It was never assigned to Ahrenholz nor did he ever assume Behring's obligations thereunder. He simply assented to changes in a proposed agreement to sell the land of which he had become owner, to which agreement he recognizes his title became subject when the agreement was consummated.

By letter to Behring dated September 24, Sun gave notice to Behring that a building permit, provided for in paragraph 8 and referred to in paragraph 9, had not been received, nor had Sun been assured of the dedication and acceptance of the right of way, and it was, therefore, extending the date of settlement for not to exceed 180 days beyond September 25.

From then until February, Sun and Behring's counsel and representatives dealt with each other about the property. The building permit matter was soon resolved. Sun discovered what it contended were clouds on the title. Some of these Behring's counsel acknowledged were encumbrances violating Behring's obligation under the agreement to convey a good and marketable title free of liens, easements and restrictions and insurable by a title insurance company.[2] The existence of others was undisputed but not their effect.[3] The right of way was at first not dedicated, then later was dedicated, but never accepted by the county. In short, before and after September 25, at least until late December or early January, Sun and Behring, working together, were attempting to get the transaction into satisfactory form to close. Counsel for Behring did, however, repeatedly ask that a closing date be set, and objected to what he considered to be dilatoriness by Sun.

On February 20, before the expiration of 180 days from September 25, Ahrenholz notified Sun that its delay in closing was unjustified and he considered Sun had breached the contract.[4] Shortly before expiration of 180 days Sun tendered performance. Neither Behring nor Ahrenholz appeared at the time and place designated for closing.[5] By that time most, if not all, of the defects in title had been either removed or acceded to by Sun, but the dedication of the right of way had not been accepted by the county.

Sun sued Ahrenholz and Behring for specific performance. Ahrenholz counterclaimed for breach of contract and demanded a jury. Behring counterclaimed for an equitable lien to protect its interests. The court ordered all issues tried by jury. The jury found in favor of defendants on the claim for specific performance and awarded Ahrenholz damages of $7,500 on his counterclaim. We reverse and direct that Sun be granted specific performance.

■■ Sun was entitled to the directed verdict which it requested. Sun had the right to extend the time of closing for 180 days. By formal pre-trial stipulation the parties agreed that "Ahrenholz knew of and agreed to and ratified the change in the closing date in the contract." As amended, the contract is unambiguous. In addition it contains an

---

2. There were elaborate subdivision building restrictions, including a restriction against using the property for a service station. Also there were utility easements.

3. There were reservations in favor of a drainage district. The title insurance binder obtained by Sun noted them as an exception to its insurance coverage. Behring's counsel took the position these were not under Florida law encumbrances justifying refusal to close.

4. In the letter he asserted he was successor in title to Behring, which he was, and assignee, which he was not.

5. Even then Ahrenholz did not treat the contract as terminated. He called the title company where the closing was to occur and attempted to determine what conditions Sun would impose at the closing, but was unable to find out. He told the title company he would not be present, that the notice to him of closing was too short.

integration clause.[6] Ahrenholz cannot escape the effect of its unambiguous terms by his testimony that he understood in agreeing to the change in the closing date that he was agreeing to an extension of 60 days (from July 25 to September 25), and that Sun would be required to close by September 25 with no right to further extend the time.[7] Coupled with this is Ahrenholz's theory that after September 25 the contract remained in effect but that Sun had only a reasonable time in which to close, which time it exceeded.[8]

■ Appellees seek to escape the 180-day extension on the ground it was untimely given. The letter was mailed September 24 but addressed to Behring at 4800 rather than 2800 E. Oakland Park Boulevard, the address provided in the agreement, and reached Behring by certified mail on September 27. We pretermit whether notice was required to be given by September 25 and whether it was effective when mailed or upon receipt. The District Judge found (and we think correctly) that time was not of the essence of the contract. And, additionally, both Behring and Ahrenholz treated the contract as continuing in effect,[9] they continued to attempt to perform, and Behring repeatedly called on Sun to speed up its performance. Then 148 days after September 25, Ahrenholz —not Behring—claimed a breach. The post-litigation claim of untimely notice, must be rejected.

Reversed and remanded with directions to grant specific performance to appellant.

## ON PETITION FOR REHEARING

By petition for rehearing appellees correctly point out that our opinion erroneously stated that by formal pre-trial stipulation the parties agreed that Ahrenholz knew of and agreed to and ratified the change in the closing date in the contract. See also footnote 7 of our opinion. Such a stipulation was proposed by plaintiff but apparently not accepted by the defendants. The absence of a consummated stipulation does not, however, change the result.

Ahrenholz's theory of the case can be described this way. When, around July 25, Behring's representative and Sun's representative met to consider whether Behring would agree to the changes required by Sun, Ahrenholz agreed (in a telephone conversation with Behring's

---

6. "This agreement merges all prior negotiations and understandings between the parties and constitutes their entire contract. . . . "

7. Ahrenholz's trial testimony that Behring's representative, by telephone, communicated a request for a 60-day extension and that he assented to a 60-day extension, implies that Behring's attorney, who acted on Ahrenholz's behalf in making the changes, did not properly comply with the authorization given by Ahrenholz (which would have required striking considerable portions of par. 9 or rewriting it). This simply departs from the stipulated facts.

8. For purposes of discussion only we have assumed—and the assumptions are big ones—that Ahrenholz had rights to approve or disapprove the changes in the proposed Sun-Behring contract, to declare it breached, and to sue for damages for the alleged breach. Behring assented to the proposed contract, as amended, by its representative's entering and initialing the changes, after which Behring executed it.

Ahrenholz was a proper party defendant to a suit for specific performance. Drake v. Brady, 57 Fla. 393, 48 So. 978 (1909) ; Drake Lumber Co. v. Branning, 66 Fla. 543, 64 So. 263 (1914) ; Hannan v. Holz, 84 Fla. 1, 92 So. 874 (1922), Fisher v. Miller, 92 Fla. 48, 109 So. 257 (1926) ; Harris v. Requa, 105 Fla. 312, 140 So. 911 (1932) ; Hartford Fire Ins. Co. v. Brown, 119 Fla. 610, 160 So. 657 (1935).

9. As late as December 8, Behring's representative acknowledged that Behring could not convey the land free of utility easements and asked that Sun accept a modified easement or "releas[e] us from any further obligations under this contract."

representative) to a 60-day extension of the closing date. Behring's representative then changed paragraph 9 of the proposed contract so that it provided for settlement on or before September 25. If the consequence of this change was to leave in effect the right of the Buyer (Sun) to extend the closing date for a period of 180 days from September 25, the "aforesaid date," referred to in paragraph 9 as amended, then the change made by Behring's representative departed from what Ahrenholz had agreed to, and Ahrenholz is bound to no more than he agreed to.

■ The contract, as amended, to which only Behring and Sun were parties, was unambiguous. It may not be rendered ambiguous by misunderstandings—if there were any—in a private conversation between Behring's representative and Ahrenholz. For purposes of assenting to changes in the proposed contract, Ahrenholz made Behring's representative his own representative. As between Ahrenholz and Sun, under fundamental principles of agency law Ahrenholz cannot escape responsibility for the commitment made by his representative. Whether Behring's negotiator had actual or apparent authority to represent Ahrenholz's position, Ahrenholz is responsible for the negotiator's [allegedly] unauthorized representations if true representations as to the same matter were within his authority, and if Sun had no notice that the representations were unauthorized. Restatement (2d), Agency §§ 51, 145, 149, 162, 169. Ahrenholz gave Sun no notification of any limits to Behring's authority, nothing appears in the record to indicate Sun knew of any limitations, and nothing about the course of dealing or the relative positions of the parties indicates that Sun should have known or had reason to know of Ahrenholz's intentions or instructions about the 60 day extension. See Restatement (2d), Agency § 9.

The petition for rehearing is denied.