**MTO MARITIME TRANSPORT OVERSEAS, INC.**

v.

**UMM AL JAWABY PETROLEUM COMPANY, N.V.**

C.A. No. H–84–1633.

United States District Court, S.D. Texas, Houston Division.

Dec. 9, 1985.

James J. Sentner, Jr., Haight, Gardner, Poor & Havens, Houston, Tex., for plaintiff.

R. Scott Hogarty, Fulbright & Jaworski, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, Jr., District Judge.

### Introduction

Plaintiff brought this action pursuant to the admiralty and maritime jurisdiction of this Court, which arises under Rule 9(h) of the Federal Rules of Civil Procedure, seeking damages for breach of a liner booking contract entered into between plaintiff and defendant.

On September 18, 1985, the case was tried to the Court without a jury. Having heard all of the testimony and having carefully reviewed documentary evidence, this Court hereby enters these Findings of Fact and Conclusions of Law, concluding that plaintiff is entitled to recover actual damages proximately resulting from defendant's breach of an oral contract of affreightment.

*Findings of Fact*

1. At all times material hereto, plaintiff, M.T.O. Maritime Transport Overseas, Inc. (hereinafter referred to as "M.T.O."), was a corporation duly organized and existing under the laws of the State of Texas with an office and place of business in Houston, Texas.

2. At all times material hereto, defendant, UMM Al Jawaby Petroleum, N.V. (hereinafter referred to as "Jawaby"), was a corporation duly organized and existing under the laws of the Netherlands with an office and place of business in Houston, Texas.

3. At all times material hereto, defendant, McLendon Forwarding Company (hereinafter referred to a "McLendon"), was a corporation organized and existing under the laws of the State of Texas with an office and place of business in Houston, Texas.

4. Defendant, McLendon, never entered an appearance in this action, and a decree of default was entered on September 17, 1984.

5. Defendant, Continental Emsco Company, was voluntarily dismissed by order dated January 22, 1985.

6. At all times material hereto, M.T.O. acted as the duly authorized agent for M.L.S. Maritime Logistics Service, S.A. (hereinafter referred to as "M.L.S."), and entered into an oral contract of affreightment on the behalf of M.L.S. (Plaintiff's Exhibit 1; Testimony of John Miller).

7. At all times material hereto, McLendon was a freight forwarder duly licensed by the Federal Maritime Commission. (Testimony of Frank McLendon).

8. Defendant Jawaby engaged the services of McLendon to arrange for the ocean transport of two workover drilling rigs and related equipment from Houston, Texas to Libya. (Plaintiff's Exhibits 25, 26; Testimony of Frank McLendon and Shelly Eckeroth).

9. The selection of the ocean carrier was left to the complete discretion of McLendon, who served as the duly authorized agent of Jawaby. (Defendant's Exhibit 11; deposition testimony of Mohamed Khalid; testimony of Frank McLendon).

10. McLendon entered into a booking contract with World Navigation, Inc., and North Africa Navigation, Ltd. (hereinafter referred to as "World Navigation"), and the first rig with related equipment was carried by World Navigation without incident. (Testimony of Frank McLendon and Shelly Eckeroth).

11. McLendon entered into a booking contract with World Navigation for the carriage of the second drilling rig and related equipment on, or about, December 3, 1983. (Defendant's Exhibit 4; testimony of Frank McLendon).

12. When it came time for the second rig and related equipment to be transported, McLendon ascertained that World Navigation did not have an available vessel and therefore could not perform in accordance with the booking contract entered into on December 3, 1983. (Defendant's Exhibit 9 with attached affidavit of Frank McLendon; testimony of Frank McLendon).

13. McLendon advised Jawaby concerning World Navigation's inability to perform in accordance with the terms of the booking contract. (Testimony of Frank McLendon and Shelly Eckeroth).

14. Jawaby allowed McLendon complete discretion in the arrangements for substitute transportation of the second rig and related equipment. (Defendant's Exhibit 11, deposition testimony of Mohamed Khalid; testimony of Frank McLendon).

15. Acting within the course and scope of his engagement as the freight forwarding agent of Jawaby, on, or about, December 28, 1983, McLendon entered into a booking contract for the carriage of the second rig and related equipment with M.T.O. (Defendant's Exhibit 9 with attached affidavit of Frank McLendon; testimony of John Miller and Frank McLendon).

16. As is customary practice within the shipping industry, plaintiff's representative, Bernard Gibson, left the liner booking

note with McLendon after reaching an oral agreement. (Plaintiff's Exhibit 1; testimony of John Miller and Frank McLendon).

17. Although the liner booking note was never executed by McLendon, the parties reached an oral agreement regarding all of the material terms of the contract and they intended to be bound by the terms of the oral agreement. (Testimony of Frank McLendon and John Miller).

18. As the agent of M.L.S., M.T.O. arranged for the carriage of the second rig and related equipment on the carrier M/V "THALASSINI KYRA." (Plaintiff's Exhibits 1, 4, 5; testimony of John Miller).

19. Although McLendon knew that the cargo was subject to a prior booking note with World Navigation, he advised M.T.O. that the prior contract had been breached and cancelled, and represented to M.T.O. that the drilling rig and related equipment would be available for transport on, or about, January 10, 1984. (Plaintiff's Exhibit 13; testimony of John Miller and Frank McLendon).

20. The rig and related equipment were never delivered to M.T.O., which positioned the vessel M/V "THALASSINI KYRA" in Houston ready to receive the cargo. (Testimony of John Miller and Frank McLendon).

21. Despite the efforts of M.T.O. and McLendon, World Navigation refused to deliver the drilling rig and related equipment to M.T.O. (Plaintiff's Exhibits 8, 9, 10, 13; testimony of Frank McLendon and John Miller).

22. McLendon accompanied M.T.O. and offerd testimony in support of M.T.O.'s unsuccessful attempt to secure release of the cargo by obtaining an injunction against World Navigation on January 6, 1984 in Cause No. C.A. H–84–58, which was filed in the United States District Court for the Southern District of Texas. (Defendant's Exhibit 9; testimony of Frank McLendon and John Miller).

23. As a freight forwarder with many years of experience who had arranged for substitute carriers on many occasions under similar circumstances, McLendon did not anticipate difficulty in obtaining release of the cargo from World Navigation. (Testimony of Frank McLendon).

24. Both M.T.O. and McLendon believed that World Navigation's refusal to release the cargo upon orders of the freight forwarder was a violation of the regulations established by the port authority. (Plaintiff's Exhibit 14; testimony of John Miller and Frank McLendon).

25. McLendon exerted good faith efforts on behalf of Jawaby. There is no evidence to support Jawaby's allegations of fraud, collusion, or fraudulent procurement of contract. (Testimony of Frank McLendon and John Miller).

26. World Navigation was ultimately unable to perform in accordance with the terms of their booking contract, and delivery of the cargo was substantially delayed. (Testimony of Shelly Eckeroth and Frank McLendon).

27. Although the unexecuted memorandum of the agreement provides that M.T.O. would supply a vessel "on or about January 3, 1984," it is clear from the subsequent conduct of the parties that January 10, 1984, was the agreed upon departure date. Furthermore, the time arrangements were satisfactory to McLendon. Indeed, the rig and related equipment were not shipped until considerable time had elapsed after M.T.O.'s vessel departed. (Plaintiff's Exhibit 1, 10; testimony of John Miller, Frank McLendon, and Shelly Eckeroth).

28. By reason of Jawaby's failure to deliver the cargo, the vessel, M/V "THALASSINI KYRA," sailed with significant dead freight. (Plaintiff's Exhibits 11, 20, 21, 22; testimony of John Miller).

29. Although the M/V "THALASSINI KYRA" was ready to sail on January 11, 1984, M.T.O. detained its vessel at the Port of Houston until January 12, 1984, incurring detention costs in the amount of $10,006.67. (Plaintiff's Exhibits 10, 17, 19, 20, 21; testimony of John Miller).

30. M.T.O. made unsuccessful efforts to mitigate the damages by attempting to locate substitute cargo. (Plaintiff's Exhibits

16, 17, 18, 19, 21, 22, 23; testimony of John Miller).

31. M.T.O. is the duly authorized agent of M.L.S. Within the ordinary course and scope of its agency, M.T.O. regularly collects freight charges on behalf of M.T.S., and was authorized to bring the present law suit. (Plaintiff's Exhibits 1, 11; testimony of John Miller).

### Conclusions of Law

1. This Court has jurisdiction of this matter pursuant to Rule 9(h) of the Federal Rules of Civil Procedure.

2. It is a well established and time honored custom that oral contracts of affreightment are valid under maritime law. *See, e.g., Union Fish Co. v. Erickson,* 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261 (1919) (oral contracts of affreightment create rights under maritime law which cannot be directed by contrary state law); *Hellenic Lines Ltd. v. Gulf Oil Corp.,* 340 F.2d 398 (2d Cir.1964) (enforcing collateral oral affreightment contract); *Atlantic Banana Co. v. M/V "CALANCA",* 342 F.Supp. 447 (S.D.N.Y.1972) (upholding validity of oral contract of affreightment), and *Orient Mid-East Lines v. Albert F. Bowen, Inc.,* 1972 A.M.C. 1509, 458 F.2d 572 (2d Cir. 1972).

3. The signing of a written contract of affreightment, also referred to as a "booking contract" or "booking note" is not necessarily an element of booking. "Booking" also has reference to an oral engagement of space. *See P.D. Marchessini & Co. v. H.W. Robinson & Co.,* 287 F.Supp. 728 (S.D.N.Y.1967). Under maritime law, a binding contract is therefore created when a freight forwarder and a carrier reach an oral agreement on all material terms of a booking contract and intend to be bound by its terms. *See Orient Mid-East Lines, supra.*

4. Applying the law to the facts of this case, this Court concludes that it is uncontested that a valid, binding oral contract was entered into between McLendon and M.T.O. concerning all of the material terms of the contract, and that McLendon's subsequent failure to execute the booking note is without legal effect. The written note was contemplated by the parties merely as a convenient memorial or written evidence of an obligation already undertaken by the parties.

5. As Jawaby's duly authorized freight forwarding agent, McLendon possessed actual and apparent authority to bind Jawaby by the terms of the oral contract entered into with M.T.O. *See Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, *reh'g denied,* 634 F.2d 1355 (5th Cir.1980). *See also Sun Oil Co. v. Behring Properties, Inc.,* 480 F.2d 310 (5th Cir.1973), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973).

6. The contract imposed no legal duty upon M.T.O. to obtain release of the cargo from World Navigation. To the contrary, plaintiff relied to its detriment upon the defendant's representations that the cargo would be available for loading. Jawaby's failure to deliver the cargo to M.T.O. is a breach of the contract of affreightment. *See Rederi A/B Pulp v. Republic Chemical Corp.,* 1980 A.M.C. 1415 (2d Cir.1960).

7. By reason of defendant's breach, M.T.O. is entitled to recover damages for dead freight in the sum of $88,890.64, which amount is uncontested, together with interest and costs, and reasonable attorneys' fees.

8. The terms of the oral contract entered into by M.T.O. and McLendon did not include fixed demurrage charges for delay prior to the anticipated loading of the rig and related equipment. Thus, M.T.O. may recover actual damages for detention proximately caused by defendant's breach. *See Sugar Products Co. v. Mobile & Gulf Nav. Co.,* 268 F. 815 (5th Cir.1920).

9. After weighing the conflicting testimony and evidence concerning the basis for the detention of the vessel, this Court determines that the plaintiff has

failed to demonstrate persuasively that the detention of the vessel was reasonable and proximately caused by defendant AL JA-WABY's breach of contract and/or misrepresentations. Consequently, plaintiff is not entitled to recover damages for detention in the amount of $10,006.67.

10. After failing to obtain an injunction against World Navigation which would have compelled the release of the cargo, the parties had an additional five days within which to exert efforts to obtain the release of the cargo prior to the time plaintiff's vessel was ready to sail. Even if McLendon represented that he was engaged in last minute efforts to obtain release of the cargo, which is disputed by the testimony of McLendon, given the intervening time period, the detention of the vessel for an additional thirty hours was unreasonable under the circumstances. Thus, the damages sustained by M.T.O. due to the detention of the vessel did not proximately flow from defendant's breach of the oral contract of affreightment.

11. Unless contractual terms expressly provided that "time is of the essence," the failure to timely perform is not an automatic breach of contract, and maritime law customarily affords a grace period when departure is expressed in terms of "on or about" a specified date. *See Isbrandtsen Co., Inc. v. Lyncroft Grain Corp.*, 1957 A.M.C. 2112 (City Ct.N.Y. 1957). Thus, Jawaby's contention that defendant's performance under the contract is excused by M.T.O.'s failure to timely perform, is without legal merit.

12. This Court directed the parties to file Post-Trial Memoranda addressing Jawaby's objections to M.T.O.'s status as the real party in interest. Defendant failed to assert by way of "specific negative averment," including supporting particulars in the pleading, objections to M.T.O.'s status as the real party in interest as is required by Rule 9(a) of the Federal Rules of Civil Procedure. Furthermore, defendant failed to timely or properly raise a Rule 12(b)(6) defense. Even though plaintiff attached the unsigned booking note, which set forth M.T.O.'s agency rela-tionship with M.L.S., to the original complaint, Jawaby did not challenge M.T.O.'s status until the eve of trial in the Joint Pretrial Order. Thus, there is substantial legal merit, in M.T.O.'s position, expressed in its Post-Trial Memoranda, that defendant has waived its right to object to plaintiff's status as the real party in interest. *See Myers v. Manchester Insurance & Indemnity Co.*, 572 F.2d 134 (5th Cir.1978), *citing, Pace v. General Electric Co.*, 55 FRD 215, 16 Fed.R.Serv.2d 529 (W.D.Pa. 1972). Nevertheless, there is sufficient evidence of M.L.S.'s interest and capacity to sue present in the record. Consequently, in the interest of justice, and to avoid prejudice to either of the parties, M.T.O.'s Rule 15(b) motion should be granted to allow plaintiff to amend the pleadings by adding M.L.S. as a party plaintiff. *See Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir.1981).

In the event that the foregoing Findings of Fact also constitute Conclusions of Law, they should be regarded as such. In the event that the Conclusions of Law also constitute Findings of Fact, they are adopted as such.

*Conclusion*

Accordingly, this Court concludes that the defendant, Jawaby, through the actions of its fully authorized freight forwarding agent, McLendon, who was acting within the actual and apparent scope of his agency, entered into a valid, binding oral contract of affreightment with M.T.O., which was acting as the duly authorized agent of M.L.S. In reliance upon the representations of defendant, M.T.O. positioned a vessel in the Port of Houston ready to receive the contracted freight. As a consequence of defendant's failure to deliver the cargo for loading, plaintiff's vessel sailed with significant dead freight because M.T.O. was unsuccessful in its efforts to obtain substitute cargo. As a proximate cause of defendant's breach of the oral contract, plaintiff has sustained damages in the amount of $88,890.64, and is entitled to recover that amount, together with interest and costs, and reasonable attorneys' fees from Jawaby. This Court further deter-

mines that plaintiff is not entitled to recover $10,006.67 in damages for detention of its vessel, said detention being unreasonable under the circumstances in the case. Although M.T.O. has presented sufficient facts and law to support the conclusion that defendant has waived the right to object to M.T.O.'s standing as a real party in interest, there being sufficient evidence in the record of M.L.S.'s interest and capacity to sue, in the interest of justice and without prejudice to either party, M.T.O.'s motion to add M.L.S. as a party plaintiff is hereby granted.