777 So.2d 1182 (2001)
JNC ENTERPRISES, LTD, etc., Appellant,
v.
ICP1, INC., etc., et al., Appellees.
No. 5D99-2925.
District Court of Appeal of Florida, Fifth District.
February 16, 2001.
*1183 Patrick A. McGee of McGee & Powers, P.A., Orlando, for Appellant.
Stephen M. Corse & Carlos B. Castillo of White & Case, LLP, Miami, for Appellees.
THOMPSON, C.J.
JNC Enterprises, Ltd. (JNC), appeals a final summary judgment in favor of ICP 1, Inc. and ICP 2, Inc. (collectively ICP). We affirm.
JNC and ICP entered an agreement for the purchase of approximately 2727 acres of largely undeveloped real property owned by ICP. JNC agreed to purchase the property "as is, where is, with all faults," and with no warranties. JNC agreed that it had and would rely solely on its own investigation and inspections of the property, and not on any representations made by ICP. ICP was to provide a boundary survey and a title insurance commitment, and JNC was to give notice within seven days of any title or survey defects it wanted cured. ICP had the option of curing any complained-of defect or terminating the contract. In the event of termination, JNC's deposit would be returned.
Under the agreement, JNC was given a 30 day period in which to "undertake such physical inspections and other investigations of, and inquiries concerning, the ... Property ... and determine the feasibility and advisability of the Property Purchase." ICP was required to provide "access to all non-privileged documentation in its possession or control or in the possession or control of its agents or consultants concerning the Property." Under the contract, JNC could elect to terminate the agreement for any reason within 30 days of its execution. If JNC did not terminate the contract, it was obliged to tender additional deposit money by the 30th day. JNC agreed that the 30-day inspection period was sufficient "to provide Purchaser with all information needed by Purchaser *1184 to make an informed decision regarding acquisition of the property." The parties agreed that time was of the essence of the contract.
JNC did not close and did not make the additional deposit at the end of the 30 days. Instead, the parties executed an amendment to the agreement which extended the closing date and the time within which to make the additional deposit. The amendment increased the purchase price and the amount of the second deposit. All deposits were "at risk and nonrefundable," and would be forfeited if the agreement failed to close for any reason, other than as a result of ICP's default. A second amendment, executed the day before the extended closing date, again extended the closing date. The deposits were "deemed earned" by JNC, and the escrow was instructed to deliver the deposits to ICP. JNC was to receive a credit for the deposits at closing.
The second amendment also provided:
The time granted under the Agreement for inspections, review of the Title Commitment and Survey and any other due diligence in connection with the Property Purchase has previously expired and is of no further force and effect. Purchaser has no right to object to and Sellers have no obligation to address or cure any objection to the title, Survey or other matters affecting the Property. There are no conditions to Purchaser's obligation to close on the Property Purchase as provided in the Agreement.
JNC did not close, but sued for a declaratory judgment. JNC alleged that environmental reports about an abandoned cattle dipping vat and environmental contamination should have been disclosed but were not. JNC asked the court to adjust the contract price and order specific performance of the contract at the adjusted price. Alternatively, JNC asked the court to extend the inspection period or require ICP to remove the contamination. The court entered judgment on the pleadings for ICP and JNC appealed. This court reversed the judgment because the court had not granted leave to amend. See JNC Enterprises, Ltd. v. ICP1, Inc. 720 So.2d 292 (Fla. 5th DCA 1998).
On remand, JNC sued for breach of contract, specific performance and fraud, and the court entered summary judgment for ICP. On appeal, JNC argues that the court should not have considered the amendments to the contract because the amendments were not incorporated into its breach of contract claim, attached to the motion for summary judgment, or attached to ICP's representatives' affidavits. There is no dispute that the contract was amended or about the terms of the amendments, so it would have been error for the court to fail to consider them. See Harry Pepper & Associates v. Lasseter, 247 So.2d 736 (Fla. 3d DCA), (affirming dismissal of complaint with prejudice based on exhibit to complaint and noting that in considering motion to dismiss, "trial court was required to consider exhibit... attached to and incorporated in the... complaint"), Fla. R. Civ. P. 1.130(b) (providing that "[a]ny exhibit attached to a pleading shall be considered part thereof for all purposes").
JNC also argues that ICP was not entitled to summary judgment even if the amendments were considered, because ICP's motion misrepresented the terms of the amendments. The motion asserted that under the amendments ICP had no further obligations. This statement is a paraphrase or a legal conclusion, and the particular contract provisions are quoted following the statement. The second amendment provided that the inspection period had ended, that the buyer had no right to object to the title, the survey, or other matters affecting the property, and that there were no conditions to the purchaser's obligation to close. We think that the statement that ICP had no further contractual obligations was a fair construction of the amendment.
*1185 Turning to the merits of JNC's claims, and viewing the record in the light most favorable to the non-moving party, see Watson v. Hahn, 664 So.2d 1083 (Fla. 5th DCA 1995), we conclude the trial court properly entered summary judgment. The undisputed facts are that the property in question at some point had undergone development of regional impact permitting, which resulted in massive paperwork contained in a storage facility. Included in the paperwork was an environmental report stating that there were no environmental problems on the property. Another report, apparently in the possession of a bank, states that a suspected cattle dipping trough was in fact a watering trough, and that there were no environmental problems on the property. JNC argues that these reports would have caused it to suspect that there might have been contamination on some other part of the property. It is also undisputed, however, that JNC received ICP's letter stating that JNC could have access to the property documentation through ICP's broker, and that JNC did not ask for access to the documents. It is further undisputed that ICP was not aware of the contamination that was later discovered. Because there is no showing that ICP breached the contract, the court properly entered summary judgment on the breach of contract count. We note further that JNC agreed in the amendment that it had no right to object to the title, the survey, or any other matters affecting the property. See Rybovich Boat Works, Inc. v. Atkins, 587 So.2d 519 (Fla. 4th DCA 1991) (affirming summary judgment in favor of seller where buyer had contractually waived right to claim defects in title).
We also hold that the court properly entered summary judgment on JNC's claims for specific performance and fraud. JNC was not entitled to specific performance because it was in default. See Hooper v. Breneman, 417 So.2d 315 (Fla. 5th DCA 1982) (specific performance properly denied where buyer had not complied with its contractual obligations). As to the fraud claim, we note JNC's admission that it received ICP's letter stating that it could have access to the property documentation through ICP's broker. The failure to hand over what was not requested does not amount to a misrepresentation. JNC also alleged that ICP's omission of any reference to a cattle dipping vat created a false impression, but ICP had no affirmative duty to turn documentation over to JNC. See Kaplan v. Peterson, 674 So.2d 201, 203 (Fla. 5th DCA 1996), (doctrine of caveat emptor still prevails in Florida with regard to sales of commercial real property).
Finding no error, we affirm the summary judgment in favor of ICP.
AFFIRMED.
PETERSON, J., and ORFINGER, M., Senior Judge, concur.