936 So.2d 699 (2006)
Robert C. FREE, Appellant,
v.
Marion FREE, f/k/a Marion Moore, Appellee.
No. 5D05-2393.
District Court of Appeal of Florida, Fifth District.
August 4, 2006.
Rehearing Denied September 1, 2006.
*700 Kenneth D. Morse, of Kenneth D. Morse, P.A., Orlando, for Appellant.
August J. Stanton, III, of Stanton & Gasdick, Orlando, for Appellee.
SAWAYA, J.
The final judgment presented to us for review grants to Appellee, Marion Free, the equitable relief of specific performance of a "Contract for Sale and Purchase" and an attached "Land Contract" (collectively referred to as the contract). The judgment is founded on three rulings by the trial court alleged to be erroneous by Appellant, Robert Free, who purchased the property subject to the contract: 1) the contract is valid and enforceable despite the lack of attestation by two witnesses; 2) Marion Free was not in default of the contract and was, therefore, not precluded from seeking specific enforcement of its provisions; and 3) Robert Free was ordered to pay the closing costs associated with the conveyance of the real property despite provisions in the contract requiring that some of the costs be paid by Marion. *701 We do not believe the first two rulings are erroneous, but conclude that it was error to require Robert to pay all of the closing costs in contravention of the express terms of the contract.
In July 1996, Ron and Marion Free entered into a "Contract for Sale and Purchase" with Mr. and Mrs. Leibeck regarding property the Leibecks were offering for sale. The purchase price was $150,000, and the transaction concluded without the assistance of a real estate agent or broker. Attached to the contract was a handwritten agreement entitled "Land Contract," also signed by all parties, which required payments of $1,000 per month and set forth the following pertinent terms:
$108,000.00 Note at 7%$42,000.00 Existing Bank Note paid by Buyer. The final payment to be made on or before August 1, 1998
John & Janet Leibeck will occupy property until contract is paid in full with 90 days notice from buyer to vacate property. At that time good and marketable title and deed will be turned over.
Buyer and Seller will split closing costs, and title insurance. Mobile dwelling will be turned over for a fee of $1.00 (one dollar). Land taxes to be paid by buyer.
The signatures on the handwritten contract were notarized, but there were no witnesses.
Ron and Marion moved onto the property and made improvements at a cost of approximately $30,000. They were occasionally unable to pay the full monthly amount to the Leibecks on time, but the Leibecks accepted the late payments without complaint. To accommodate Ron and Marion's financial situation, the Leibecks had extended the date for the final balloon payment twice.
Ron and Marion were experiencing severe marital problems by early 2002. Three days after Marion had Ron arrested on domestic violence charges, Ron's father, Robert Free, discussed with Mr. Leibeck the possibility of purchasing the "note and mortgage," advising Mr. Leibeck that he was attempting to help Ron and Marion's marriage. Robert subsequently bought the property via a warranty deed executed by the Leibecks for the amount of $82,000, which was close to the existing balance owed by Ron and Marion.[1] Robert then offered to allow Ron and Marion to make 120 monthly payments of $1,000 each at 7% interest.
Marion refused the offer and filed suit for specific performance of the contract previously entered into with the Leibecks. Robert answered the complaint, asserted affirmative defenses, and counterclaimed. Among his many contentions, Robert asserted that the contract was unenforceable because it did not have the signatures of two witnesses required by section 689.01, Florida Statutes, and because the contract had been breached by Marion. Robert's *702 counterclaim sought $24,625 for money he had loaned to Marion, a writ of ejectment to remove Marion from the property, and to quiet his title claim.
Following a trial, the trial court made extensive findings of fact and settled many issues of credibility against Robert. The court concluded that the original Land Contract had twice been extended and was not in default; that chapter 689, Florida Statutes, was inapplicable to the contract; and that even if the contract was in default, Robert was required to foreclose Marion's interest in the property. The court ordered Robert to transfer the property to Marion for $82,000 within thirty days and denied his claim for interest and closing costs. Regarding Robert's counterclaim, the trial court awarded Robert $5,000, but denied his claims for ejectment and to quiet title in him. Robert appeals, arguing that the remedy of specific performance is wholly inappropriate for the reasons previously stated.[2]
The decision whether to decree specific performance of a contract is a matter that lies within the sound judicial discretion of the trial court and it will not be disturbed on appeal unless it is clearly erroneous. Bliss v. Hallock, 113 So.2d 889 (Fla. 3d DCA 1959); Martin v. Albee, 93 Fla. 941, 113 So. 415 (1927); Jordan v. Boisvert, 632 So.2d 254, 256 (Fla. 1st DCA 1994); Henderson Dev. Co. v. Gerrits, 340 So.2d 1205, 1206 (Fla. 3d DCA 1976) (citing Molina v. Reiss, 254 So.2d 853 (Fla. 3d DCA 1971)); see also Rybovich Boat Works, Inc. v. Atkins, 585 So.2d 270, 272 (Fla.1991). The exercise of that discretion is governed by consideration of all of the facts and circumstances of the case and application of well-settled legal and equitable principles. Bliss; Stein v. Brown Props., Inc., 104 So.2d 495 (Fla.1958); Martin; Humphrys v. Jarrell, 104 So.2d 404, 410 (Fla. 2d DCA 1958). These considerations and applications make for the advancement of justice and fairness, which are the ultimate goals to be achieved by invocation of this equitable remedy. Rybovich, 585 So.2d at 272 ("[T]he court contemplating an order of specific performance is obligated to consider whether this remedy, based on the facts of the case, would achieve an unfair or unjust result. If so, specific performance is not permitted.") (citing Todd v. Hyzer, 154 Fla. 702, 18 So.2d 888 (1944)).
The relief requested in a suit for specific performance may be granted if it is first established that the contract is valid and enforceable. See Hembree v. Bradley, 528 So.2d 116 (Fla. 1st DCA 1988); Parker v. Weiss, 404 So.2d 820, 821 (Fla. 1st DCA 1981). This is one of those well-settled legal principles previously alluded to, and its status as a legal issue requires that we resolve it based on the de novo standard of review. Robert asserts the contract is invalid because it was not executed in the presence of two subscribing witnesses. He bases this argument on the provisions of section 689.01, Florida Statutes, which essentially require that for a transfer of real estate or an interest in it to be valid, the instrument of conveyance must be in writing and signed by the grantor in the presence of two subscribing witnesses. Because this statute and its provisions regulate the mode of conveying real property or of creating an estate in it, the statute does not apply to documents that are not instruments of conveyance. Thus we must next determine whether the contract at issue here constitutes an instrument *703 of conveyance within the meaning of the statute.
Our analysis of the contract leads us to the inevitable conclusion that it constitutes an agreement for deed, which is typically defined as an agreement that requires the seller to convey legal title to the buyer after the buyer pays all of the installments of the purchase price. White v. Brousseau, 566 So.2d 832 (Fla. 5th DCA 1990). An agreement for deed is primarily utilized as a security device and an alternative to immediate conveyance of title to the buyer with a purchase money mortgage back to the seller. Id.; see also Muina v. Canning, 717 So.2d 550 (Fla. 1st DCA 1998); Purcell v. Williams, 511 So.2d 1080 (Fla. 1st DCA 1987). The Legislature and this court have declared that such agreements are essentially mortgages with attendant rights and remedies provided to mortgagors and mortgagees, which include the seller's remedy of foreclosure if the buyer defaults and the buyer's right of redemption. § 697.01, Fla. Stat. (2005); Vandenberg v. Wells, 721 So.2d 453 (Fla. 5th DCA 1998) (and cases cited therein); see also Muina; Luneke v. Becker, 621 So.2d 744 (Fla. 2d DCA 1993).
A mortgage creates a lien under Florida law, and because it does not convey an interest in real property, the requirements associated with its execution are not as exacting as those of instruments of conveyance, such as a deed. § 697.02, Fla. Stat. (2005); Marcus v. Hull, 142 Fla. 306, 195 So. 170 (1939); Wertkin v. Wertkin, 763 So.2d 461 (Fla. 4th DCA 2000); Martyn v. First Fed. Sav. & Loan Assn., 257 So.2d 576 (Fla. 4th DCA 1971); see also Great Southwest Fire Ins. Co. v. DeWitt, 458 So.2d 398 (Fla. 1st DCA 1984). Therefore, section 689.01 does not apply to mortgages, see Walker v. Franklin, 669 So.2d 1088 (Fla. 4th DCA 1996) (rejecting appellant's argument that the contract for deed failed because it was not signed by two witnesses); Rosenthal v. Finger & Margolis, P.A., 460 So.2d 993 (Fla. 4th DCA 1984); Carroll v. Dougherty, 355 So.2d 843 (Fla. 2d DCA 1978); Kroner v. Esteves, 245 So.2d 141 (Fla. 3d DCA 1971), and because the contract (agreement for deed) executed by Marion is a mortgage, the fact that it does not contain the signatures of two subscribing witnesses is no impediment to the equitable relief decreed by the trial court. See Walker.
In anticipation that the law might well be as we have stated it, Robert takes the alternative position that even if the contract is valid, Marion was late in her installment payments and therefore was in default of the very document she seeks to have him specifically perform. He claims that possession and ownership of the property are therefore rightfully his. We acknowledge that a party who has failed to comply with his or her contractual commitments is generally not entitled to require the other party to specifically perform the contract, unless the noncompliance was excused or waived. See JNC Enters., Ltd. v. ICP 1, Inc., 777 So.2d 1182, 1185 (Fla. 5th DCA 2001) ("JNC was not entitled to specific performance because it was in default.") (citing Hooper v. Breneman, 417 So.2d 315 (Fla. 5th DCA 1982) (holding that specific performance was properly denied where buyer had not complied with its contractual obligations)); see also Robinson v. Abreu, 345 So.2d 404 (Fla. 2d DCA 1977). Robert's argument overlooks the fact that the late payments were accepted by the Leibecks without complaint and that they granted two extensions of the contract to Marion. If there was noncompliance by Marion, it was certainly excused or waived by the Leibecks.
Moreover, Robert's argument is premised on vestiges of strict common *704 law principles of rather ancient vintage that allowed forfeiture upon default and the seller to automatically reenter and resume ownership of the property. Application of these principles resulted in very harsh consequences in many cases and so the courts discarded them long ago by requiring that mortgages in default be foreclosed in legal proceedings and that the mortgagor have a right of redemption. Therefore, if Robert had a remedy, it was foreclosure of the mortgage. See Muina; Luneke. Hence the trial court was correct in holding that the contract was not in default and that even if it had been, Robert failed to pursue the correct remedy. We conclude that the trial court did not abuse its discretion when it decreed specific performance of the contract. This is the just and fair result here.
Robert argues that if this is so, it was unfair and unjust for the trial court to require him to pay all expenses and costs associated with the sales transaction when the clear and unambiguous provisions of the contract require Marion to pay a portion of them. We agree. The illogic and unfairness that emanates from fashioning a decree for specific performance that requires Robert to perform all of his contractual commitments with portions of Marion's heaped upon him is readily apparent and we will not condone it. Moreover, the legal principles we have previously discussed say we should not. As a prelude to granting the relief requested, the trial court held that the contract was valid and enforceable: logic and the law dictate that the trial court may not declare its validity and then refuse to require the parties, including the party seeking the equitable relief, to honor all of their contractual commitments. See Anthony James Dev., Inc. v. Balboa St. Beach Club, Inc., 875 So.2d 696, 698 (Fla. 4th DCA 2004) ("The purpose of specific performance is to compel a party to do what it agreed to do pursuant to a contract."). We also note that a corollary to the rule requiring Marion to demonstrate her willingness and ability to perform all of her contractual commitments is the prohibition of relieving her from one or more of those commitments while requiring Robert to comply with all of his. See Anthony James. We, therefore, reverse that portion of the final judgment and remand this case to the trial court to require the parties to pay their costs and expenses as required by the provisions of the contract.
AFFIRMED in part; REVERSED in part; REMANDED.
PALMER and LAWSON, JJ., concur.
NOTES
[1] The record clearly reveals that Robert had notice of the contract and purchased the property with that knowledge. He therefore acquired the property subject to the contract executed by Marion. See Harris v. Requa, 105 Fla. 312, 140 So. 911, 914 (1932) ("The rule is well settled that `one purchasing property with notice that the grantor had contracted to convey it to another may be compelled to perform the contract in the same manner and to the same extent as his grantor would have been liable to do, had he not transferred the legal title.'") (quoting Drake v. Brady, 57 Fla. 393, 48 So. 978, 979 (1909)); McDonald v. McGowan, 402 So.2d 1197, 1200 (Fla. 5th DCA 1981) ("The law in this jurisdiction is well established that a person purchasing property with notice that the seller had contracted to convey it to another may be compelled to perform the contract in the same manner as the seller would have been required to do, had he not transferred the legal title.").
[2] Although Robert also appeals raising several issues regarding his counterclaim, we believe no error was committed by the trial court as to those issues and so we affirm that part of the judgment without further elaboration.