WENTWORTH, Senior Judge.
Appellant, Rose Printing Company (Rose), challenges a final judgment based on a jury award of $252,803 for an alleged breach of an employment contract between Rose and appellee John E. Haggerty. Of the issues raised on appeal and cross-appeal, the only issue we find to merit discussion at this time is Rose’s contention that the trial court erred in denying directed verdict and entering judgment for Haggerty, based on a jury verdict including a *607 finding of performance by Haggerty under an employment contract with Rose. We reverse.
Rose originally employed Haggerty as a bindery manager with a written employment contract[1] on March 9,1987. Haggerty alleges that the contract was changed by mutual agreement between him and Charles Rosenberg, president of Rose Printing, to a three year service contract for the plant manager position. Haggerty placed in evidence his handwritten memorandum, which consisted of a list of demands, and a handwritten note from Rosenberg to him which stated: “Jack, I intend to complete our agreement on your request several months ago. We’ve had lots of other interruptions. I continue to have every bit of confidence in you!! [signed] Charles.” The proceeding now before us involved a dispute as to whether the handwritten notes constituted a written contract for personal services exceeding one year to avoid restraints of the statute of frauds.
Rosenberg met the demands listed by Haggerty and made him plant manager beginning on April 1, 1988. Rosenberg now argues, however, that he never drafted a contract, that there was no meeting of the minds regarding the terms of the alleged contract, and that in any event Hag-gerty voluntarily withdrew his services as plant manager.
Haggerty and Rosenberg had conflicts, and Haggerty initiated a request to step down from his plant manager job in November 1988. Haggerty testified:
I advised Mr. Rosenberg that I would like to step down from that job. It wasn’t working out, things were not right, and he needed someone in there that had better technical capabilities than I had because I could not do a job for him there.
Haggerty further testified: “I indicated I wanted out of it (the plant manager position). ... I gave up responsibility for it in November.”
Rosenberg agreed to allow Haggerty to step down. There was no discussion regarding Haggerty’s alleged contract, and Haggerty continued to receive the same financial benefits he had received as plant manager, although he performed only his work as bindery manager with Rosenberg working as the plant manager. Rosenberg testified and Haggerty admitted that Hag-gerty’s responsibilities substantially decreased after he left the plant manager position. Haggerty asserted, however, that the disputed contract was not strictly for the plant manager position, and that he therefore did not breach the contract by relinquishing plant manager duties.
In December, Rosenberg had consultant Wyatt review the operation. Wyatt recommended that Rosenberg put Haggerty back as plant manager. Both Haggerty and Rosenberg testified that Haggerty initially indicated that he was not interested in resuming the plant manager position until Rosenberg drafted the promised written three year contract. Haggerty testified that Rosenberg was still very hostile and said “Don’t talk — don’t talk about a contract. You’ll be lucky if you keep your job if things keep going the way they are.” Haggerty stated that the only thing he recalled about the 30 day trial period was that Mr. Wyatt said both of them were upset so why didn’t they just “give it a try.” Haggerty indicated that he agreed to that. Rosenberg also testified that he told Haggerty that he would take him back as plant manager only on a 30 day trial basis with no guarantee and no contract. Rosenberg further testified that Haggerty agreed to take the position on a trial basis without a contract. In January 1989, Hag-gerty resumed the plant manager position.
In the middle of March, Rosenberg hired a new plant manager and a new general manager and told Haggerty that he was going back to the bindery. He never mentioned pay, and things continued in that status quo until March 28th when the company car was taken from Haggerty. In April Haggerty was advised that his bonus programs were null and void. Finally on *608 April 26,1989, he was called into a meeting and advised his salary was going to be cut from $50,000 to $44,500. Haggerty submitted a letter indicating he felt that he had a contract which they were obligated to honor, and the management responded by advising him his salary would be cut. On May 2, 1989, Haggerty sent Rose a letter of resignation.
Haggerty contended that his plant manager contract remained in effect after he stepped down and continued to remain in effect when he resumed the plant manager position, although he testified he was then told “Don’t talk about a contract.”[2] Rosenberg contended that he never drafted the original three year plant manager contract, and that Haggerty resumed the plant manager position with notice that it was on a trial basis without a contract. He indicated that Haggerty’s salary was cut because he hired another plant manager and a general manager, and the company could not afford to continue paying Haggerty the salary of a plant manager since he was no longer performing that function. Haggerty sought damages for the period of May 2, 1989 when he resigned, until the end of the three year term of the alleged contract at the end of 1990.
The case proceeded to a jury trial in which the jury found that there was an enforceable three year employment contract between Haggerty and Rose based on a written contract or memoranda recognized by both Haggerty and Rose. The jury also found (1) that Haggerty performed under the contract and (2) that Rose had no cause to terminate the contract because Haggerty failed to perform his job.
Assuming (for the purposes of argument only) that the three year plant manager contract met the requirements of the statute of frauds, we find that there was no evidence from which the jury could determine Haggerty’s performance under the disputed contract. There is no conflict as to the fact that Haggerty voluntarily stepped down from the position of plant manager in November, 1988. He thereby breached the contract by abandonment or failed consideration or performance. In Binz v. Helvetia Fla. Enter., 156 So.2d 703, 704 (Fla. 3d DCA 1963), cert. denied, 162 So.2d 665 (Fla.), appeal dismissed mem., 379 U.S. 12, 85 S.Ct. 117, 13 L.Ed.2d 24 (1964), reh’g denied mem., 379 U.S. 917, 85 S.Ct. 266, 13 L.Ed.2d 189 (1964), our sister court held:
It is axiomatic that where a promise to pay a sum of money is made upon the consideration of a promise to perform a certain service, the consideration fails, and the promise to pay is discharged, if the services are not performed.
In Binz, contrary to the case before us, there was no commencement of the period of service bargained for; however, in Sanitary Linen Serv. Co. v. Alexander Proudfoot Co., 435 F.2d 292, 294 (5th Cir.1970), the court considered that circumstance and held that there was no difference between that situation and one where the service contracted for is not substantially completed as contemplated and the promisee is without fault in the undertaking. See also, Singleton v. Foreman, 435 F.2d 962, 971 (5th Cir.1970). In the present case, Hag-gerty admitted that he was not working out as plant manager and initiated a request to step down. His relinquishment of the duties in those circumstances resulted in failed consideration and an abandonment of the three year plant manager contract, assuming it was previously enforceable. See Gustafson v. Jensen, 515 So.2d 1298, 1301 (Fla. 3d DCA 1987) (Parties may by their actions indicate abandonment of the terms of a contract and thereafter the contract may not be specifically enforced); Boswell v. Dickinson, 300 So.2d 61 (Fla. 1st DCA 1974), cert. denied, 312 So.2d 742 (Fla.1975) (same); see also, Cordis Corp. v. Prooslin, 482 So.2d 486, 490 (Fla. 3d DCA 1986), citing Seaboard Oil Co. v. Donovan, 99 Fla. 1296, 1305, 128 So. 821, 824 (1930) (“A party is not entitled to enjoin the breach of contract by another unless he himself has performed what the contract requires of him so far as possible”); Richland Grove & Cattle Co. v. Easterling, 526 *609 So.2d 685 (Fla.1988) (broker not entitled to commission or enforcement of broker’s contract where broker voluntarily abandoned his efforts to sell the property).
Haggerty admitted that, of his own volition, he ceased being plant manager in November 1988. Any promise to pay under the alleged three year agreement was discharged when Haggerty ceased to perform. Haggerty has not contended, nor has he presented any such evidence, that a new agreement for a definite term was entered into when Haggerty again temporarily assumed the duties of plant manager several months later. Any agreement pursuant to which Haggerty subsequently served as plant manager would therefore be terminable at will.
Although Haggerty argues, in effect, a waiver by continued payment of the same salary and financial benefits he received as plant manager, we note the general rule that: “Payment under the contract is not of itself, and without regard to the circumstances under which it was made, conclusive evidence of a waiver.” 17A C.J.S. 697 Contract § 492(1) (1963). Moreover, any ambiguity as to Haggerty’s understanding and Rosenberg’s intention as to those payments was resolved by the testimony of both Haggerty and Rosenberg that shortly thereafter Haggerty was told he had no contract and resumed the plant manager position only to “give it a try.” We conclude that the record establishes that Rose did not condone or assent to the significant failure of consideration inherent in Haggerty’s breach of the alleged three year contract by terminating performance of the plant manager duties. The trial court therefore erred in denying Rose’s motion for directed verdict and post-trial motions covering this point.
The judgment awarding Haggerty $252,-803 for breach of an alleged employment contract with Rose Printing is reversed.
JOANOS, C.J., and NIMMONS, J., concur.

. The validity of this contract is not at issue.

. Haggerty contended that the services provided were irrelevant despite the fact that the alleged contract was an employment or service contract.