948 So.2d 26 (2006)
NACOOCHEE CORPORATION, Assignee of Eagle Land Group, Inc., Appellant,
v.
Diane PICKETT, Appellee.
No. 1D05-3675.
District Court of Appeal of Florida, First District.
December 6, 2006.
Rehearing Denied February 8, 2007.
*27 Jason B. Gonzalez of Ausley & McMullen, P.A., Tallahassee; Cary Ichter and Beth T. Baer of Balch & Bingham LLP, Atlanta, GA, for Appellant.
Donald H. Partington of Clark, Partington, Hart, Larry Bond & Stackhouse, Pensacola, for Appellee.
COOPER, JOHN C., Associate Judge.
The plaintiff, Nacoochee Corporation ("Nacoochee"), appeals from an order granting specific performance of a contract for the purchase of real property from the defendant, F. Diane Pickett. Nacoochee contends that, under the terms of the contract, the trial court erred in calculating the purchase price of the property based on the acreage of the entire parcel, rather than reducing the price to exclude the wetlands acres. The defendant cross-appeals from the denial of her counterclaim below for breach of contract. She asserts that the trial court should not have granted specific performance of the contract, because the plaintiff's breach entitled her to terminate the agreement altogether. While we find no error in the trial court's calculation of the purchase price, we conclude that the plaintiff's breach rendered the contract unenforceable and specific performance inappropriate. We therefore reverse the trial court's order.
In 2002, Eagle Land Group, Inc. and Pickett entered into a written agreement for the purchase and sale of a tract of land owned by Ms. Pickett in Walton County, Florida. Eagle Land Group, Inc. subsequently assigned its rights in the agreement to Nacoochee Corporation.
The contact provided for a purchase price of $3,635,500 for 1,398.28 acres at $2,600 per acre. The purchase price was subject to adjustment if a survey disclosed "acreage of more or less than 1,398 acres."
The contract also contained an "earnest money" provision, which required the buyer to deposit $20,000 into an escrow account with Chicago Title Insurance Company within five business days of the final signing date. It further required the buyer to deposit an additional $100,000 of earnest money into the account within five business days after final acceptance of the property, pursuant to Paragraph 7 of the contract.[1]
Finally, the contract contained a breach provision providing that if the buyer failed to perform its obligations it would have 60 days after notice from the seller to cure its failure. If the buyer failed to timely cure, the seller would have the right to terminate the contract and receive the earnest money as full liquidated damages.
Pursuant to the contract, the buyer commissioned two surveys of the subject property. One, a boundary survey, stated the total acres to be 1,402.50 acres4.22 more acres than the original 1,398.28 acres stated in the contract. The second survey, a wetlands survey, showed that the property contained 776.86 acres of wetlands.
In anticipation of an agreed closing date of May 7, 2004, Nacoochee submitted closing documents to Pickett setting forth a total purchase price of $1.7 million, based on the total number of uplands acres only, rather than the original contract price of $3.6 million for the entire parcel. Despite Nacoochee's intention to pay the contractual *28 price per acre for only the upland acreage, it expected to receive title to the entire 1,402.50-acre tract. Pickett refused to close for the lower, uplands-only price. In response, Nacoochee offered to pay the full contractual purchase price if Pickett would accept $1.7 million, payable immediately, and accept a mortgage for $1.9 million for the remainder of the original $3.6 million purchase price. Nacoochee concedes that it never offered $3.6 million in cash at closing, as required by Section 1.3 of the contract.[2]
Additionally, Pickett discovered in early May 2004 that the buyer had not made either of the two earnest money deposits. Under the contract, these deposits should have been made in 2002.
Shortly before the anticipated closing date of May 7, 2004, Nacoochee demanded that Pickett close the sale within 30 days for $1.7 million. On May 18, 2004, Nacoochee's attorney mailed Pickett's attorney a check from his law firm trust account for $20,000, representing the initial earnest money deposit required under the contract. Pickett's attorney refused to accept the check. Nacoochee also paid $100,000 representing the second earnest money deposit required by the contract into a single-party escrow account at Chicago Title Insurance Company. On May 28, 2004, Pickett notified Nacoochee that the contract was terminated.
Nacoochee then brought suit against Pickett for specific performance (Count I) and breach of contract (Count II). Pickett counterclaimed for cancellation and rescission of the contract.
After a three-day non-jury trial, the trial court rejected Nacoochee's argument that the purchase price should be reduced based on the number of wetland acres in the parcel and established the sale price as $3,646,500, based on 1402.50 acres at $2,600 per acre. Pickett's counterclaim was denied and specific performance was awarded to Nacoochee. The trial court rejected Pickett's argument that she was entitled to terminate the contract because Nacoochee did not timely deposit the earnest money required by the contract, attempted to pay only for uplands, and refused to close the sale for the full contract price in cash.
We review the trial court's factual findings below under the competent substantial evidence standard and its interpretation of the contract under the de novo standard. See Clegg v. Chipola Aviation, Inc., 458 So.2d 1186, 1187 (Fla. 1st DCA 1984); USA Independence Mobilehome Sales, Inc. v. City of Lake City, 908 So.2d 1151, 1154 (Fla. 1st DCA 2005).

Nacoochee's Direct Appeal
Nacoochee contends the trial court erred in calculating the purchase price for the property based on the entire acreage of the parcel, rather than only the uplands acreage. It relies on Paragraph 6 of the contract, which allowed for a survey of the property to determine the total number of acres exclusive of wetlands. Contrary to Nacoochee's position, the trial court found that the provisions of Paragraph 6 did not provide for reducing of the purchase price based upon the number of acres in public roads, flood plains, or wetlands. We find no basis to reverse the ruling of the trial court on the direct appeal by Nacoochee.

Pickett's Cross-Appeal
On her cross-appeal, Pickett argues that the trial court erred in rejecting her claim *29 of cancellation and rescission, and in granting Nacoochee's claim for specific performance. Because Nacoochee did not timely deposit the earnest money required by the contract, attempted to pay for uplands only, and refused to close the sale for the contract price in cash, Pickett contends that she was entitled to terminate the contract for breach.
The subject clauses of the contract are Paragraphs 2 (Earnest Money) and 14 (Default), which provide:
2. Earnest Money.

Purchaser shall pay to the Chicago Title Insurance Company as Escrow Agent, the sum of TWENTY THOUSAND AND 00/100 DOLLARS ($20,000.00) as earnest money, ("the Earnest Money"), said payment to be made within 5 business days of the Final Signing Date. In the event Purchaser has not terminated this Agreement on or before Sixty days after the Final Signing Date, $10,000 of the Earnest Money shall become non refundable for any reason except Seller non performance. After acceptance of the Property under Paragraph 7, an additional $10,000 of Earnest Money shall become non refundable except for Seller non performance. After acceptance of the Property under paragraph 7, Purchaser shall deposit $100,000 within 5 business days as Additional Earnest Money. The Earnest Money and Additional Earnest Money shall be applied as a credit to the purchaser against the Purchase Price or shall be retained or refunded as the case may be according to the terms of the Agreement.
14. Default of Parties, Liquidated Damages.

In the event Purchaser shall fail to perform its obligations of this Agreement and such failure is not cured within sixty (60) business days after notice from Seller, then Seller shall as its sole and exclusive remedy have the right to terminate this Agreement and receive the Earnest Money as full liquidated damages. The Parties hereby acknowledge the difficulty of ascertaining Seller's actual damages in such circumstance and agree that the forfeiture of the Earnest Money represents a good faith resolution thereof. If Seller fails or refuses to convey the Property in accordance with the terms of this Agreement or otherwise perform its obligations hereunder, and such failure or refusal is not cured within Five (5) days after Notice from Purchaser, then Purchaser shall have the right to Terminate this Agreement, receive a refund of the Earnest Money, specific performance, and any and all other rights and remedies available at law or in equity for Seller's breach.
Pickett asserts that the trial court erred in two findings it used to support its award of specific performance. Specifically, she challenges the court's findings that Nacoochee was prepared to pay the $3,635,500 contracted purchase price, and that the notice and cure provision required Pickett to notify Nacoochee of its default by failure to make the earnest money deposits and to allow it an opportunity to cure this failure before she could terminate the agreement.

Tender of Full Purchase Price
Pickett contends that Nacoochee breached the contract, because it never tendered the full purchase price in cash, as required by the terms of the contract. Nacoochee does not dispute that it failed to tender full cash payment. In fact, counsel for Nacoochee candidly admitted at oral argument before this Court that it never tendered the full contract price in cash. Despite this failure, however, it maintains that it was entitled to specific performance.
*30 Paragraph 1.3 required full payment in cash, and Paragraph 16 specifically provided that "time is of the essence." The trial court erred in finding that Nacoochee "was ready, willing and able to pay the balance of the purchase price under the terms of the agreement." This finding implies that Nacoochee tendered payment in cash of the full purchase price, which the record does not support. See Clegg, 458 So.2d at 1187 (recognizing that trial court's resolution of factual issues in a non-jury trial is subject to reversal if not supported by competent evidence in the record).
Nacoochee's failure to tender the full price in cash at the time of closing constituted a material breach of the express terms of the contract. A material breach by one party may be considered a discharge of the other party's obligations thereunder. See Rose Printing Co. v. Haggerty, 584 So.2d 606 (Fla. 1st DCA 1991). A party to a contract is not entitled to specific performance where that party did not perform its obligations under the clear terms of the contract. See JNC Enterp's, Ltd. v. ICP 1, Inc., 777 So.2d 1182, 1185 (Fla. 5th DCA 2001). Therefore, Nacoochee was not entitled to specific performance, because it breached the material terms of the contract by failing to tender payment in full at the time of closing.

Notice and Cure Provision
Pickett also asserts that the trial court erred in ruling that Nacoochee's failure to timely make the earnest money deposits was subject to the notice and cure provisions in Paragraph 14. Pickett argues that the provision does not apply to the earnest money requirements of the contract, because it was effective only if the earnest money had been deposited in the first place. She asserts that, since Paragraph 14 provides that the seller's remedy for default was to retain the earnest money, it would be illusory to suggest that a purchaser's failure to make those very earnest money deposits would be a breach of the contract that is subject to the notice and cure provision.
The purchaser's obligation to timely deposit the earnest money is an essential element of the contact not subject to the notice and cure provisions of Paragraph 14. We reject Nacoochee's argument that Pickett waived the right to complain about its failure to deposit the earnest money merely because she continued to negotiate the purchase price after learning that the earnest money had not been deposited. Nacoochee's failure to timely meet the earnest money requirements of the contract constituted a material breach of the express terms of the contract, thereby discharging Pickett of her obligations under the contract. Because of this breach, the trial court erred in ordering specific performance.
Therefore, we reverse and remand with directions to vacate the order below and to enter judgment in favor of the defendant. Reversed.
BARFIELD and DAVIS, JJ., concur.
NOTES
[1] Paragraph 7 provided 120 business days from the final contract signing date for the buyer to make investigations and studies of the property to determine if any aspect of the property was "unacceptable."
[2] Section 1.3 of the contract provides, "Said Purchase Price shall be paid as follows: All cash at closing."