DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRANDON GOLDBERG,**
Appellant,

v.

**UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY,**
Appellee.

No. 4D19-3202

[September 9, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David Haimes, Judge; L.T. Case No. CACE-18-002460.

Douglas H. Stein of Douglas H. Stein, P.A., Coral Gables, for appellant.

Elizabeth K. Russo and Paulo R. Lima of Russo Appellate Firm, P.A., Miami, and Walton Lantaff Schroeder & Carson LLP, Miami, for appellee.

GROSS, J.

Brandon Goldberg appeals a final summary judgment entered in favor of Universal Property and Casualty Insurance Company in his action for breach of contract. We affirm in part and reverse in part. Summary judgment was proper as to the coverage on the dwelling, because Goldberg did not comply with the policy requirement that he submit a supplemental claim prior to filing suit; summary judgment was improperly entered on the personal property claim, because Universal's denial of all coverage waived its right to insist on Goldberg's compliance with the supplemental claim requirement of the policy.

### *The Loss and the Relevant Policy Provisions*

Goldberg's condominium unit was damaged by Hurricane Irma on September 11, 2017. On the date of the loss, the condominium was insured under a homeowner's policy issued by Universal. Relevant to this appeal, the policy provided the following coverages: Coverage A (Dwelling) and Coverage C (Personal Property).

The policy insures for "direct physical loss to the property described in Coverages A and C caused by" listed perils, including windstorm or hail. The "windstorm or hail" coverage

> does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust **unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening**.

(emphasis added).

The policy was amended by an endorsement titled "Unit Owners Coverage A," which modified Coverage A as follows: "We insure against risk of direct loss to property described in Coverage A, only if that loss is a physical loss to property." This endorsement did not impact personal property coverage under Coverage C.

The policy also contains several other provisions, drawn from Florida statutes, relevant to this appeal. First, the policy contains an endorsement requiring an insured to provide Universal with notice of a "supplemental claim" caused by the peril of windstorm or hurricane:

> **You must give notice of** a claim, **a supplemental claim**, or reopened claim for loss or damage caused by the peril of windstorm or hurricane, with us in accordance with the terms of this policy and within three years after the hurricane first made landfall or the windstorm caused the covered damage. For purposes of this Section, the term **"supplemental claim"** or "reopened claim" **means any additional claim for recovery from us for losses from the same hurricane or windstorm which we have previously adjusted pursuant to the initial claim**. . . .

(emphasis added). This provision tracks section 627.70132, Florida Statutes (2017).

Second, the policy contains this provision governing loss settlement:

> 3. Loss Settlement (HO 00 06) property losses are settled as follows:
> …

2

a. Personal property at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Coverage A – Dwelling:
(1) At the actual cost to repair or replace.
(2) ***We will initially pay at least the actual cash value of the insured loss, less any applicable deductible***. We will then pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred, subject to b.(1) above and this item b.(2).

(emphasis added).

Finally, the policy contains a "no action" clause stating that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within five (5) years after the date of loss."

### *Universal's Inspection and Estimate*

On September 28, 2017, Goldberg submitted a Property Loss Notice to Universal, describing the loss as follows: "Irma caused water damage. Condo association didn't secure door due to recent renovation. Once hurricane came[,] wind forces seeped water into baseboard, lower walls, wooden floors started to blister/swell and furniture, carpet, personal property damaged throughout unit."

On October 14, 2017, an adjuster inspected Goldberg's condominium on Universal's behalf. The next day, the adjuster completed an estimate stating that the replacement cost value for the loss to the dwelling was $12,960.80, which, after depreciation, reflected an actual cash value of $9,158.43. After subtracting the $1,000 deductible, the estimate arrived at a net claim value of $8,158.43.

The estimate did not include any payment for damage to personal property. Two photographs the adjuster submitted to Universal contained the notation that "[p]ersonal property damaged by wind driven rain, no coverage under the policy." In a deposition, Universal's corporate representative testified that there was no coverage for Goldberg's personal property because there was "no storm-created opening." The representative elaborated that "[t]he field adjuster did not observe any storm-created opening." The representative conceded that Universal had not relied upon any sort of causation expert to make its coverage decision with respect to coverage for personal property.

3

### Universal's Payment to Goldberg

On October 16, 2017, Universal issued a payment to Goldberg in the amount of $8,158.43, which was its estimate of the actual cash value of the loss, less the $1,000 deductible.

That same day, Universal sent Goldberg a letter advising him that his policy included "a replacement cost option for the dwelling portion of the loss." The letter explained that "depreciation has been applied and is recoverable as work is performed and expenses are incurred," and that "[t]he total of your recoverable depreciation would be up to $3,802.37." The letter further stated: "Once any additional expenses are verified, we will evaluate your eligibility for disbursement of the recoverable depreciation."

### Pre-Suit Communications with Universal

About three weeks later, Goldberg called Universal and "advised that he had a proposal which was higher than" Universal's estimate. Universal asked Goldberg to forward the proposal, but he never did. Universal's corporate representative testified that Universal never received an estimate from Goldberg, that Goldberg never asked Universal to pay a specific amount, that Goldberg never submitted an inventory form for damaged contents, and that for Universal to have paid additional amounts in this case would have required the company to guess the amount that Goldberg claimed in additional damages.

On December 21, 2017, Goldberg's counsel sent Universal a letter of representation, requesting various categories of documents related to the claim. The letter stated that "this office is requesting this information prior to commencing any litigation in the interest of attempting to amicably resolve this matter." The attorney's letter did not provide Universal with a supplemental claim or a damage estimate.

Universal did not provide any documents in response to Goldberg's counsel's letter. On January 30, 2018, an attorney for Goldberg called Universal requesting to know the status of the claim.

### The Pleadings

The next day, Goldberg filed a one-count complaint against Universal for breach of contract, alleging that Universal "underpaid the claim," "refused to pay the full value of the claim," and "materially breached the Policy by failing to pay all of the benefits due and owing."

Universal filed an answer and affirmative defenses, contending that it had "accepted coverage and fully paid all covered damages under the policy." As an affirmative defense, Universal asserted that Goldberg never filed a supplemental claim and never provided Universal with a separate estimate prior to filing suit.

### *Universal's Motion for Summary Judgment and Goldberg's Response*

After discovery, Universal moved for summary judgment on Goldberg's failure to submit a supplemental claim. Universal argued that it was entitled to summary judgment because Goldberg did not submit an estimate or a supplemental claim prior to filing suit.

Goldberg filed a response to the motion for summary judgment, contending that he was not required to submit a supplemental claim because Universal breached the policy by (1) failing to issue payment for at least the actual cash value of the insured loss, less any deductible, as required by both the policy and section 627.7011(3), Florida Statutes, and (2) failing to issue payment for the loss to his personal property.

At the hearing on the motion for summary judgment, the trial judge focused on whether there was any record evidence of a breakdown in the claims process before Goldberg filed suit.

Ultimately, the trial court granted Universal's motion for summary judgment, ruling that "[p]laintiff failed to submit a supplemental claim as required by the terms and conditions of the subject policy and Florida law, with resulting prejudice to Defendant." The trial court denied Goldberg's motion for rehearing, but clarified that nothing in its ruling would preclude Goldberg from "filing a supplemental claim as permitted under the subject policy."

### *Summary Judgment Standard*

The standard of review of an order granting summary judgment is de novo. *Gomez v. Fradin*, 41 So. 3d 1068, 1071 (Fla. 4th DCA 2010). A movant is entitled to summary judgment "if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). "[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence

of any genuine issue of material fact."  *Albelo v. S. Bell*, 682 So. 2d 1126, 1129 (Fla. 4th DCA 1996).

### *Goldberg was Required to File a Supplemental Claim with Universal before Filing his Lawsuit for Alleged Underpayment of the Loss to the Dwelling*

The threshold issue is whether Goldberg was required to submit a supplemental claim before filing suit for additional payment for the loss to the dwelling.  The policy's "no action" clause stated that no action could be brought against Universal unless Goldberg complied with the policy conditions.  Based on the policy language drawn from a Florida statute, we hold that Goldberg was required to file a supplemental claim setting forth those damages he sought in excess of what the insurance company had already paid.

The policy in this case states that one of the insured's duties after loss is to notify Universal of a "supplemental claim" caused by the peril of windstorm or hurricane within three years of the storm making landfall.  The policy defines a "supplemental claim" for the purpose of this section as "any additional claim for recovery from us for losses from the same hurricane or windstorm which we have previously adjusted pursuant to the initial claim."  This definition tracks the definition of a "supplemental claim" set forth in section 627.70132, Florida Statutes, which states in pertinent part:

> A claim, supplemental claim, or reopened claim under an insurance policy that provides property insurance . . . for loss or damage caused by the peril of windstorm or hurricane is barred unless notice of the claim, supplemental claim, or reopened claim was given to the insurer in accordance with the terms of the policy within 3 years after the hurricane first made landfall or the windstorm caused the covered damage. For purposes of this section, the term "supplemental claim" or "reopened claim" means *any additional claim for recovery from the insurer for losses from the same hurricane or windstorm which the insurer has previously adjusted pursuant to the initial claim*.

§ 627.70132, Fla. Stat. (2017) (emphasis added).

Here, the record shows that Universal "previously adjusted" Goldberg's initial claim after he filed the Property Loss Notice in September 2017, and then promptly paid $8,158.43 on that claim.  After Universal had

6

"previously adjusted" the initial claim, any request by Goldberg for additional payment for losses from the same hurricane fell within the meaning of an "additional claim for recovery . . . for losses from the same hurricane" which Universal had "previously adjusted."  Thus, under the terms of the policy, Goldberg was required to notify Universal that he claimed further damages from Hurricane Irma.

We distinguish this case from the two cases upon which Goldberg relies, *Chavez v. Tower Hill Signature Insurance Co.*, 278 So. 3d 231 (Fla. 3d DCA 2019), and *Milhomme v. Tower Hill Signature Insurance Co.*, 227 So. 3d 724 (Fla. 3d DCA 2017), as neither case applied the definition of a "supplemental claim" applicable to hurricane losses set forth in the Universal policy and in section 627.70132.

*Milhomme* was a case where the insurer paid its own estimate of the insureds' claim for water damage and stated that it would consider "supplemental claims for any damages discovered in the covered reconstruction and repair" of the insured property.  227 So. 3d at 725. The Third District concluded that the insureds' claim for the amount of their independent adjuster's estimate "was not a 'supplemental claim,' or one for 'damages discovered in the covered reconstruction and repair' of the property."  *Id.*  Rather, the claim "addressed the original casualty event and the amounts contended to be necessary to repair and restore the direct physical loss to the covered property."  *Id.*

Similarly, *Chavez* involved an insurance claim for water damage from a broken drain line.  278 So. 3d at 233.  The Third District held that an insured's second lawsuit seeking damages arising out of the same loss as the first lawsuit was barred by res judicata, even though the trial court's order granting summary judgment in the first lawsuit allowed the insured to submit "supplemental claims."  *Id.*  The Third District ultimately concluded that a "supplemental claim" under the "unique facts" of *Chavez* meant an "additional claim" after the insured had commenced repairs arising out of damages for a covered loss and after the insurer's initial payment of its determination of the actual cash value.  *Id.* at 241.

Neither *Milhomme* nor *Chavez* are on point here.  Neither case involved hurricane or windstorm losses, so neither would have invoked the definition of "supplemental claim" in section 627.70132, which applies only to hurricane or windstorm losses.  Neither case applied the definition of a "supplemental claim" contained in the policy here at issue.  The definition of "supplemental claim" in this case is broader than the definitions applied in *Chavez* and *Milhomme*.  In those cases, the definition of a "supplemental claim" was limited to an additional claim made after an

7

insured had commenced repairs. By contrast, the definition of a "supplemental claim" in this case encompasses "**any** additional claim for recovery" for losses from the same hurricane which Universal had "previously adjusted pursuant to the initial claim"—whether or not the insured had commenced making repairs.

Thus, to the extent Goldberg sought additional payment for his losses from the same hurricane after the adjustment of his initial claim, the policy required him to submit a "supplemental claim," which is an "additional claim for recovery." A competing estimate by an insured's independent adjuster, or by a prospective contractor, which is submitted to the insurer would fall within this definition of a "supplemental claim."

### *Universal's Conduct Did Not Excuse the Requirement that Goldberg File a Supplemental Claim*

We next address whether the requirement that Goldberg submit a supplemental claim was excused because Universal breached the insurance policy by not paying the actual cash value of the loss to the dwelling. Under the facts of this case, we hold that Universal was not in breach of the insurance policy.

A material breach of a contract "by one party may be considered a discharge of the other party's obligations thereunder." *Nacoochee Corp. v. Pickett*, 948 So. 2d 26, 30 (Fla. 1st DCA 2006); *see also Mercury Ins. Co. of Fla. v. Anatkov*, 929 So. 2d 624, 627 (Fla. 3d DCA 2006) (holding that where the insurer first breached the policy by denying coverage which actually existed, the insured was no longer bound by the policy provision prohibiting settlement).

The policy in this case contains a provision tracking section 627.7011(3), Florida Statutes (2017). Subsection (3)(a), which applies to replacement-cost homeowner's policies, states that "[f]or a dwelling, the insurer must initially pay at least the actual cash value of the insured loss, less any applicable deductible." In applying this statute, we agree with the approach taken by the Third District, which that court summarized in *Vazquez v. Southern Fidelity Property & Casualty, Inc.*, 230 So. 3d 1242, 1243 (Fla. 3d DCA 2017):

> ***Section 627.7011(3) requires payment of actual cash value—not merely the insurance company's estimate of actual cash value***. Where, as here, there is a genuine issue of material fact as to the amount of actual cash value, the insurance company has sent the homeowners a letter

indicating it does not intend to make any additional payments unless and until repairs are made, and the homeowners have brought an action challenging whether the insurance company paid actual cash value as required by the policy and statute, summary judgment may not be granted in favor of the insurance company.

(emphasis added); *see also Siegel v. Tower Hill Signature Ins. Co.*, 225 So. 3d 974, 978 (Fla. 3d DCA 2017); *Francis v. Tower Hill Prime Ins. Co.*, 224 So. 3d 259, 262 (Fla. 3d DCA 2017).

This case is different than the Third District cases because in each of the cases cited in the preceding paragraph, the insured submitted a competing estimate of damages to the insurance company before filing suit. While an insurer's unilateral determination of the cash value of a loss does not entitle it to summary judgment in the face of a competing estimate of damages, the insurer should not be deemed to have breached the contract where it accepted coverage and paid the only estimate it received of the actual cash value of the loss.

Where Universal paid its own estimate of the actual cash value of the loss to the dwelling, Goldberg's breach of contract action with respect to that loss was premature when he filed suit without having first submitted a supplemental claim, a competing estimate, or even a demand letter specifying the claim to inform Universal of the amount of additional benefits to which he believed he was entitled.

### *Goldberg was Not Required to File a Supplemental Claim after Universal Denied all Coverage for his Personal Property Loss*

The final issue is whether Goldberg was required to submit a supplemental claim after Universal denied coverage for his personal property loss.[1]

An insurer's repudiation of coverage waives the insurer's right to insist upon the insured's compliance with policy conditions, such as filing a proof of loss. *See Bryant v. GeoVera Specialty Ins. Co.*, 271 So. 3d 1013, 1021 (Fla. 4th DCA 2019). "[W]here an insurer's 'denial of liability is based upon grounds other than failure to furnish a notice or proof of loss, such

---

[1] We conclude that Goldberg adequately preserved the argument that a supplemental claim was not required where no payment was issued for personal property.

denial is tantamount to a waiver of the policy requirements.'" *Id.* (quoting *Keel v. Indep. Life & Acc. Ins. Co.*, 99 So. 2d 225, 227 (Fla. 1957)).

Here, by failing to pay any amount for the personal property loss, Universal effectively denied coverage for that loss. Such a denial of coverage waives the insurer's right to insist upon the insured's compliance with policy conditions, such as submitting supplemental claims. For this reason, the trial court erred in granting summary judgment on the personal property loss on the sole ground that Goldberg did not submit a supplemental claim for the personal property loss.[2]

*Affirmed in part, reversed in part, and remanded for further proceedings.*

ARTAU, J., and SCHOSBERG FEUER, SAMANTHA, Associate Judge, concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***

---

[2] Universal's argument that Goldberg's claim for personal property damage was not covered by the policy cannot support the summary judgment, because this is a coverage issue that was not raised in Universal's motion for summary judgment. *See, e.g., Hurchalla v. Homeowners Choice Prop. & Cas. Ins. Co.*, 281 So. 3d 510, 513 (Fla. 4th DCA 2019) (stating that "[i]t is reversible error to enter summary judgment on a ground not raised with particularity in the motion for summary judgment").